COOK v. DES MOINES UNION RY. CO.
et al.
No. 948.

District Court, S. D. Iowa, Central Division.
Aug. 5, 1936.

and the case tried as a law action to the court without the interposition of a jury. Requests for findings of fact were submitted by the plaintiff and the defendants, and the case submitted to the trial court on very extensive and comprehensive briefs filed by the parties.

As this is a law action, the court is only required to sustain or overrule the several requests for findings of fact and conclusions of law made by the parties and make his final decision; but as the case is unusual, the procedure uncertain, and the questions involved numerous, troublesome, and important, some explanation of the ultimate findings of fact and conclusions of law of the court might be helpful.

The Nature of the Case and Jurisdiction.

A controversy has existed between the Brotherhood of Railroad Trainmen of the Des Moines Union Railway Company and that company since September 8, 1930, when a local grievance committee notified the general manager of the Des Moines Union of a protest and grievance against the company in permitting yardmasters to handle "pilot" jobs which had theretofore been handled by the yardmen. From that time to the present the controversy has been a claim that the Des Moines Union was violating its agreement in not permitting yardmen to act as "pilots," and to the original demand that the yardmen be restored to the duties connected with that of "pilot" has been added a demand that damages be paid to the yardmen who were damaged by the alleged breach of contract. At the present time and for some time prior hereto, therefore, the claim has been that the Des Moines Union Railway Company has breached an agreement made with the yardmen; that certain of their membership have been damaged thereby; and that they should be reimbursed for such loss or damage.

Mark C. Reno, of Des Moines, Iowa, for plaintiff Cook.

John N. Hughes, Jr. (of Hughes, O'Brien & Hughes), of Des Moines, Iowa, for defendant Des Moines Union Ry. Co.

Ray C. Fountain (of Hallagan, Fountain, Stewart & Cless), of Des Moines, Iowa, for remaining defendants.

DEWEY, District Judge.

The above-entitled action was tried upon its merits in open court at Des Moines, Iowa, on the 11th and 12th days of June, 1936. The facts were stipulated or submitted by written agreement, and such facts are adopted and found to be true and correct for the purpose of this hearing. By stipulation a jury was waived

These questions are presented to this court by virtue of paragraph (p) of section 153, title 45, U.S.Code (45 U.S.C.A. § 153 (p), which is an amendment to the Railway Labor Act (45 U.S.C.A. § 151 et seq.), and which went into effect on June 21, 1934. Subsection (p) of said section 153 provides that if an order made by the National Railroad Adjustment Board is not complied with, any person for whose benefit such order was made "may file in. the District Court of the United States * * * a petition setting forth briefly the causes for which he

claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the district court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the ·Adjustment Board shall be prima facie evidence of the facts therein stated. * * * The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside an order of the division of the Adjustment Board."

The conferring then of the power and jurisdiction on this court is as broad as it would have been had the petitioner here brought his action as an original civil suit for damages for breach of contract in this court or a court of competent jurisdiction. The only difference is that in this case the findings and order of the Adjustment Board shall be considered as prima facie evidence of the facts therein stated.

An award was duly made by the First Division of the Adjustment Board on the 6th day of September, 1935, which carefully sets out the statement of claim, position of the committee, the position of the carrier, and ends with its findings and award as follows:

"Findings: The First Division of the Adjustment Board, upon the whole record and all evidence, finds that:

"The carrier or carriers and the employee or employes involved in this dispute are respectively carrier and employe within the meaning of the Railway Labor Act, as approved June 21, 1934.

"This Division of the Adjustment Board has jurisdiction over the dispute involved herein.

"The parties to said dispute were given due notice of hearing thereon.

"The evidence indicates that Article 13 has been in the schedule since 1906 and for many years prior to the date of this claim pilots were used to handle passenger equipment between depot and yard, and to handle light engines between the roundhouse and depot.

"This Division decides that the work of piloting or handling back-up movements on this property is by practice and rule work that should be performed by yardmen as such instead of yardmasters.

"Award. Claim of employes for compensation lost is sustained to the extent that if any yardman on present seniority list was available and lost service by reason of using yardmasters as pilots he shall be paid for such days lost. Not more than one yardman to be paid for either shift involved on any date. * * *"

As the award was duly and regularly made after a full and fair hearing before a board, five of whom were selected and designated by the carriers and five of whom were designated and selected by the national labor organizations of the employees, and as the only difference between the suit here and what it would have been had the employees brought an original suit for damages for breach of contract in any court of competent jurisdiction is the presumption of the correctness of the findings of fact unanimously made by that board, it is difficult to see how the defendant Des Moines Union Railway Company has been injured in any of its constitutional rights.

## Findings of Fact.

■ There is a question as to whether the contract relied upon by the Brotherhood of Railroad Trainmen provides that yardmen must be employed for the duty of acting as "pilots," although they had exercised the duties connected with that job for many years. The contract only says that such duties "will be performed by yardmen." The claim of the members of the Brotherhood of Railroad Trainmen in effect is that this should be interpreted as reading, "must be performed by yardmen."

If there is any ambiguity in the wording, extraneous evidence should be considered in its interpretation, and having considered the evidence bearing on this question and the presumption that arises from the finding and award of the Adjustment Board, I find that the contract should be so construed as meaning that the duties of a "pilot" is a part of the duties of the yardmen and that the duties of "pilots" must be performed by yardmen.

I also find that the handling of the equipment referred to in the contract includes the handling of light engines.

## Conclusions of Law.

■ 1. I find that the statement in the next to the last paragraph of the first subsection of section 154, title 45, U.S.C. (45 U.S.C.A. § 154 (1), to wit, "All cases re-

ferred to the Board of Mediation and unsettled on June 21, 1934, shall be handled to conclusion by the Mediation Board," refers to cases having to do with mediation questions.

The Railway Labor Act very distinctly divides the jurisdiction, powers, and duties of the National Railroad Adjustment Board and the jurisdiction, powers, and duties of the National Mediation Board. The jurisdiction with reference to the nature of the disputes is broadly granted to each board. The very names imply the difference in the questions that should be delegated to each board. The former can adjust disputes having to do with the enforcement of contracts, as in this case; while the Mediation Board, having no power of enforcement, must be limited to questions that cannot be enforced by judicial proceedings and the jurisdiction of this board can be invoked where the matters in dispute are purely questions of mediation, such as questions arising as to the formation of contracts.

It will be noted that this provision, which it is claimed prevents the Adjustment Board from taking jurisdiction, is found within the section that has to do with the Mediation Board and is not found in any provisions having to do with the jurisdiction and actions of the Adjustment Board. To construe this sentence as mandatory would result in a denial of some claimants to have the benefit of the act with reference to the Adjustment Board while permitting others to have that right.

In a recent decision by Judge McDermott in the case of Vaughan v. Winston Co., 83 F.(2d) 370, 372 (C.C.A.10), he said: "Whether a statutory requirement is mandatory in the sense that failure to comply therewith vitiates the action taken, or directory, can only be determined by ascertaining the legislative intent. If a requirement is so essential a part of the plan that the legislative intent would be frustrated by a noncompliance, then it is mandatory. But if the requirement is a detail of procedure which does not go to the substance of the thing done, then it is directory, and noncompliance does not invalidate the act."

■ Both the Mediation as well as the National Railroad Adjustment Boards took the position that the requirement that all cases referred to the Board of Mediation should be handled to conclusion by the Mediation Board referred only to mediation cases and with this interpretation I agree.

■ 2. I find that the dismissal of the proceedings before the Board of Mediation and Mediation Board by complainants and refiling them under the provisions of the law with reference to procedure before the Adjustment Board did not deprive the Adjustment Board of jurisdiction.

■ 3. I find that all conditions precedent required by the statute have been complied with to give the Adjustment Board jurisdiction.

The complainants had repeatedly taken this question of dispute up with the general manager of the Des Moines Union Railway Company and the president of that company, and during all of the proceedings the position of that company remained the same, so that the condition requiring the labor organization to appeal any dispute "shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes" has been fully performed. It was not necessary therefore to again handle these proceedings through the various stages of the carrier's executive organization after dismissing the claim before the Mediation Board and filing it with the Adjustment Board, as such an act on their part would be a vain thing, and especially is this true in the light of the position taken by the Des Moines Union in the presentation of its position before the Adjustment Board.

■ 4. The statement in the act that the award shall be final and binding upon both parties to the dispute does not result in this case in depriving the Des Moines Union Railway Company of any constitutional rights or refuse to it the right of due process of law.

It is unnecessary to determine whether or not this might be a depriving of due process in certain cases, but here certainly the Des Moines Union is not deprived of any constitutional rights. The purport of the act may be to provide that the award made by an Adjustment Board shall be final so long as it is not attempted to be enforced. No provision is made in the act for the enforcement of any award or decision of the Adjustment Board, and therefore there is no deprivation by the railway company of

any rights unless and until the suit is filed in the District Court of the United States for its enforcement. When this is done it becomes an action at law with the right of a jury. The entire case is open for trial as a law action on the original suit. The case here is one which has long been known to the law as a breach of contract and, whether the provision with reference to the action before the District Court of the United States is considered as a review or the enforcement of an award only, it affords to the carrier, especially in this case, every right which it would have had the action been originally brought in this court for breach of contract, other than the question of evidence as to the presumption of the findings of the board, and it has been held so often that the Legislature may provide for presumption in certain cases with reference to evidence that the citation of authorities is not necessary to show that such a provision is not a deprivation of the due process of law or an invasion of constitutional rights.

5. It is not necessary in this case to hold any part of the Railway Labor Act unconstitutional.

Before any part of an act of Congress can be held unconstitutional, the person claiming to be so affected must show adverse injury and that is not here evident.

6. The carrier is not deprived of its right to a trial by jury.

Before any award of the Adjustment Board can be enforced under the act, resort must be made to this court for a trial on the merits. The action is at law and either party is entitled to a jury. The claim therefore that the act deprives the carrier of a jury trial is without merit.

7. The result of the action of the Adjustment Board is not affected because one of the members of the board was a vice president of the Brotherhood of Railroad Trainmen.

It is true that the procedure before the board was quasi judicial and if any member of the board was directly interested in the result his decision should not be considered on the final award. However, there is no evidence that any member of the board was so directly interested and, as the award was unanimous, the fact, if it be a fact, that one of the members was disqualified could not affect the result.

8. I find that the Act of June 21, 1934, provides for a substantial, adequate, and safe judicial review of the orders and awards of the National Railroad Adjustment Board.

9. I find that the provisions of the act with reference to taxing attorney's fees does not place an undue burden upon the railway company.

The general rule found in 15 Corpus Juris, § 249, p. 114, is as follows: "In many jurisdictions statutes have been enacted which authorize the allowance as costs of attorney's fees * * * and the constitutionality of these statutes has been upheld. In order that the fee may be allowed the case must be strictly within the statute, and its provisions must be complied with in every particular, inasmuch as the statutes are in derogation of the common law."

As long as such a penalty is not of such size as to substantially affect the right of review, it could not be so burdensome as to deprive a person of due process under the Constitution. Normal penalties in the way of taxing attorney's fees to the losing party has long been recognized as a proper provision to prevent unreasonable delays and contests on questions that have no basis for their support. The statute (section 153 (p), title 45, U.S.C., 45 U.S.C.A. § 153 (p), provides: "If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit." I know of no constitutional or legal reason why this provision should not be enforced.

Coming now to the merits of the case, we still have some important questions for determination that have to do with the measure of damages and to what person or persons such damages, if any, are to be awarded. The Adjustment Board having found that the contract had been breached awarded compensation to the extent only that any yardmen would be entitled to recoupment for lost services where they were on the present seniority list or available when yardmasters were used instead of yardmen as "pilots." Also, that not more than one yardman was to be paid for either shift involved on any date.

This no doubt would be the proper method of awarding any loss for services

occasioned to any of the yardmen through the use of yardmasters instead of yardmen as "pilots" looked at from the Railway's standpoint. The law, however, sets up a different rule, as under the award made by the Adjustment Board the plaintiff Cook could not recover while under the law, he can if he can show that the breach of the contract resulted directly in injury to him.

It is very apparent from the record, and the court finds, that prior to December 1, 1931, the plaintiff Cook was no longer a yardman but had taken jobs as switch tender and crossing watchman. There is no provision that he might retain his seniority rights as a yardman by an agreement with the manager of the railway company. He can only remain on the list so long as he continues to act as a yardman. However, this does not mean that he has not been damaged by the breach of the contract. It appears from the evidence that the very reason for leaving his job as yardman was because of the breach of the contract by the carrier. If he can show then with reasonable certainty that he was directly injured by that breach, his damages would be the difference between what he could have made had he remained as a yardman, or what he could have made had the breach not occurred, and what he did make when he was required to seek other employment.

Evidence with reference to the amount of damages and the basis upon which a finding can be had is not as clear from the evidence as it might be. For instance, it is alleged and shown by the evidence that at the time the breach occurred and the very reason for the breach was that the duties of a "pilot" had been so reduced that the company felt it should be dispensed with by the services of yardmen. On February 22, 1931, there were only twelve passenger trains that arrived or departed from the Union Station at Des Moines and some of them only had to be handled by reversing the engine. On May 17, 1931, there were only ten arrivals and departures. The evidence discloses that the handling of the equipment from the station to the yards did not take over from ten to fifteen minutes.

The evidence is silent as to the number of hours the plaintiff had been employed, but establishes that on account of a physical injury the plaintiff could only perform the duties of a yardman in the capacity of a "pilot." However, taking the evidence as it is, it establishes that had it not been for the breach of the contract the plaintiff, Cook, would have remained on the seniority list of yardmen and acted as "pilot"; and in the absence of any evidence to the contrary, the court must find that he lost a day's pay from the time of the breach of the contract, or December 1, 1931, to the date of the award, which is September 6, 1935, a period of 1,370 days, and considering the average pay lost at $6.16 a day, the amount is $8,439.20, which the evidence establishes was lost to him by the breach of the contract. But he earned during that period $2,880, so that under the evidence here the plaintiff is entitled to a judgment as against the defendant Des Moines Union Railway Company for the sum of $5,-559.20, without interest, and his attorney, Mark Reno, is entitled to a judgment for $556, which the court awards as attorney's fees under the provisions of the act, and the costs of this suit to be taxed against the railway company.

This finding makes it impossible to determine from the evidence what amount of loss resulted from the breach of the contract to the individual defendants, as the evidence with reference to any loss as to them is based on the assumption that the plaintiff Cook was not entitled to recover and there is no way from the evidence to determine what hours plaintiff Cook would have been working had the contract not been breached. The claims of the individual defendants therefore will have to be denied, but under the circumstances in this case the court will entertain a motion by any of the parties to this suit to reopen the case for the introduction of further evidence or for further arguments with reference to this question of damages.

Ruling on Requests for Findings of Fact and Conclusions of Law.

As above stated, all the parties have asked for findings of fact and conclusions of law.

The findings of fact requested by the defendant Des Moines Union Railway Company and its requests for conclusions of law are each and all respectively overruled and denied, and the Des Moines Union Railway Company excepts.

The requested findings of fact by the plaintiff, G. B. Cook, are sustained as to

items 1, 2, 3, 4, 5, 6, 12, 13, 14, 15, 19, and overruled as to the remaining items of said requested findings of fact. All parties except.

And the requested conclusions of law of the plaintiff, G. B. Cook, are sustained as to items 1, 10, and overruled as to the remaining items. Plaintiff and all parties except.

Requests for findings of fact by the defendants Gardner, McLaughlin, McDevitt, Freeland, Franklin, Hays, Wright, Miller, Bunch, Clark, and Harris, are sustained as to items 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, and overruled as to the remaining requests for findings of fact.

And the requests of said parties for conclusions of law are sustained as to items 1, 2, 3, 4, 5, 6, 9, 10, 12, 16, 19, 20, and overruled as to the remaining items of said requests for conclusions of law. The several defendants and all parties except.

As a final conclusion, the court finds that the plaintiff, G. B. Cook, is entitled to recover as against the defendant Des Moines Union Railway Company for the sum of $5,559.20 and his attorney in the sum of $556, and that the plaintiff's petition is dismissed as against the defendants E. C. Boofter, chairman, R. J. Collard, secretary, and W. H. McLaughlin, the Grievance Committee of the Brotherhood of Railroad Trainmen, and the Brotherhood of Railroad Trainmen; and the cross-petitions of the individual defendants are dismissed upon their merits, and the Des Moines Union Railway Company, G. B. Cook, and each of the cross-petitioners except.

The clerk will enter judgment as above.