## SYSTEM FEDERATION NO. 59 OF RAILWAY EMPLOYEES DEPARTMENT OF AMERICAN FEDERATION OF LABOR v. LOUISIANA & A. RY. CO.

### No. 75.

District Court, W. D. Louisiana, Shreveport Division.

Jan. 16, 1940.

Rehearing Denied March 13, 1940.

Frank L. Mulholland, of Toledo, Ohio, Floyd D. Culbertson, Jr., of Minden, La., and Clarence M. Mulholland and Willard H. McEwen, both of Toledo, Ohio, for plaintiff.

A. L. Burford, of Texarkana, Ark., and White, Holloman & White and T. W. Holloman, all of Alexandria, La., for defendant.

PORTERIE, District Judge.

█ For the purpose of passing on the question of whether or not plaintiff has stated a cause of action, all the well-pleaded facts of the petition must be taken as true and proved.

The plaintiff is an unincorporated association, a federation of craft unions, members of which are former shop craft employees of the defendant, formerly engaged as machinists, boiler makers, blacksmiths, electrical workers, sheet metal workers, and carmen, or as helpers or apprentices in the above crafts. The plaintiff is the legally selected representative of all the members of the said crafts, former employees of the defendant.

The defendant, Louisiana & Arkansas Railway Company, is a corporation organized under and existing by virtue of the laws of the State of Delaware, with its principal place of business in the City of Shreveport, Louisiana. It is engaged in the business of a common carrier by railroad and is a "carrier" subject to the provisions of the Railway Labor Act, 45 U.S. C.A. § 151 et seq.

There are ninety-five shop craft employees, given by name, shown to have entered the service of the carrier prior to the year 1929. These employees on August 1, 1929, entered into a written agreement with the carrier. This agreement set up the rules and working conditions under which all of the said shop craft employees of the defendant should perform their services thereafter. Under the said agreement and in particular by virtue of Rules 8, 9 and 12 thereof, the said shop craft employees were accorded certain legal rights of seniority, among which was the right that if employees should be furloughed from service due to a reduction in forces, the said employees should be restored to service in the event of an increase in forces in order of their seniority. In this agreement no restriction was placed upon the length of time during which a furloughed employee might retain his right to reinstatement thereunder.

The said agreement of August 1, 1929, remained in effect without objection by either party until September 15, 1930, when the defendant served notice on the plaintiff of its desire "to abrogate and revise the present schedule covering rates of pay and working conditions of the shop craft employees." On October 1, 1930, a conference was held at which time the carrier submitted its proposed new wage scale and draft of new rules. No agreement was reached at this conference, and on October 4, 1930, the employees invoked the services of the Board of Mediation to settle the dispute. Active efforts to mediate were unsuccessful and on or about February 6, 1931, the mediator in charge suggested to both parties that they submit their differences to arbitration. This suggestion was accepted by the employees but rejected by the carrier on February 7, 1931.

Here is the line of cleavage into which mover to dismiss for want of a cause of action inserts its plea. The carrier claims that, at this time, all that the Railway Labor Act, as it then read, required to be done, had been done, and the agreement of August 1, 1929, was ended and dead.

At this point, the court might say that, after study and thought, it has solved this case against the plaintiffs, because of the want of a cause of action. We must write now in support of this decision. As Judge Hutcheson says, in his work, Judgment Intuitive, "I speak of the judgment pronounced as opposed to the rationalization by the judge on that pronouncement." With our ultimate mental destination avowed frankly, we proceed.

The next act of the carrier shows that it believed the contract to be ended, for in less than two days, on February 9, 1931, the carrier promulgated a set of rules which it stated were to govern employment in its shops thereafter. These rules differed in some particulars from the proposed draft submitted to the committee on October 1st, 1930. The seniority provisions, however, were unchanged and were in fact identical with those contained in the agreement of 1929.

Subsequently, on September 1, 1931, a list or roster of carmen in the shop at Minden, Louisiana, set up in order of their seniority, was posted on the bulletin board of the defendant in the said shop. At the

bottom of the said list and over the signature of a subordinate foreman appeared the following statement:

"This seniority list will be held open for adjustment for a period of thirty (30) days or until September 30, 1931, after which time no adjustment will be made. Requests for adjustment of seniority must be made in writing to the undersigned.

"Seniority of former employes, who have not worked under the classification for which they held seniority during any twelve (12) months period, will be dropped from the seniority list."

Whether these notices complied in a technically, legally satisfactory manner with Sections 2 and 6 of the Railway Labor Act of May 20, 1926, c. 347, 44 Stat. 577, 45 U.S.C.A. §§ 152, 156, then in force, is immaterial; the original agreement of August 1, 1929, is dead nevertheless. There is no survival of it. Its life was ended according to all the provisions of the Act of 1926, meticulously followed. It could only be extant if subsequent agreement particularly preserved the supposed cause of plaintiffs, and stated its origin to be in the agreement of August 1, 1929.

Neither the carrier nor the workers took steps to get a conference under the new notices of February 9 and September 1, 1931, establishing a new contractual relation.

The rules of February 9 and September 1, 1931, however, were applied by the defendant until October 20, 1937, when another agreement was entered into between the defendant and its shop craft employees (the latter represented by the plaintiff), covering the rules and working conditions of said employees. A copy of the agreement, which is still in full force and effect, is made a part of the petition of plaintiff. This agreement contains no provision limiting the reinstatement rights of furloughed employees to one year, or to any other stated length of time. It is totally disconnected from the agreement of August 1, 1929; the ninety-five plaintiffs of the instant action do not appear therein, nor are their rights a subject of the contract.

During the period from 1929 to 1937 the various employees who are plaintiffs herein were each and all furloughed from the service of the defendant pursuant to a curtailment of operations in the defendant's shops and to a general reduction of shop forces.

At various times the carrier found it necessary to increase its shop operations and forces, but when such increases were made it refused to reinstate the plaintiffs. Instead, it advanced apprentices and helpers into positions formerly held by craftsmen or hired new employees to take the places of plaintiffs, and to perform their work. The carrier gave as its sole reason for so doing the rule of September 1, 1931, limiting the reinstatement rights of furloughed employees to a period of one year after furlough.

If, in the period intervening between September 15, 1930, and October 20, 1937, relations existing between the carrier and its shop craft employees were disorganized and antagonistic, and if, from February 7, 1931, to October 20, 1937, the carrier refused to recognize the plaintiff as the representative of any of its employees for any purpose, or to recognize any person or organization as the representative of any of its shop craft employees for any purpose, and provided no regular channel whereby any dispute between them, whether growing out of the interpretation or application of an agreement or otherwise, could be considered in conference by the representatives of the parties as provided in Section 7, First and Second of the Railway Labor Act as enacted in 1926, 45 U.S.C.A. § 157, subds. 1, 2, is altogether immaterial, insofar as the agreement of August 1, 1929, is concerned—non-extant and dead since February 7, 1931.

The court is constrained to this holding because of the clarity and force of the language of Sec. 7 of the Railway Labor Act as enacted in 1926, applicable to the agreement made August 1, 1929, and being considered in 1931. The section reads: "Sec. 7 [§ 157]. First. Whenever a controversy shall arise between a carrier or carriers and its or their employees which is not settled either in conference between representatives of the parties or by the appropriate adjustment board or through mediation, in the manner provided in the preceding sections, such controversy may, by agreement of the parties to such controversy, be submitted to the arbitration of a board of three (or, if the parties to the controversy so stipulate, of six) persons: *Provided, however,* That the failure or refusal of either party to submit a controversy to arbitration shall not be construed as a violation of any

legal obligation imposed upon such party by the terms of this Act [chapter] or otherwise."

Plaintiff further shows that on April 27, 1938, acting again as the representative of all of the shop craft employees of the carrier, it petitioned the National Railroad Adjustment Board, Second Division, to take jurisdiction of and adjust the supposed dispute which forms the basis of this suit, and filed with the said Board its submission, setting forth its claims and contentions in the matter, together with all facts and arguments relative thereto.

Notice was given by the National Railroad Adjustment Board, Second Division, to the carrier herein, and the carrier filed with the Board its answers, claims and contentions in regard to the alleged dispute. Subsequently, the Board held a hearing at which both parties were represented and given full opportunity to present all facts, data and argument. After the hearing the case was considered by the Board, and on the 21st day of November, 1938, it issued Award No. 281, supporting fully the claims of the employees, and the claims made by this plaintiff as petitioner in their behalf. Accompanying said award, the Board issued its order directed to the defendant, ordering it to comply with the award of the Board. The order of the Board is unenforceable as such.

The court cannot see a labor dispute between the carrier and the plaintiffs herein over the agreement of August 1, 1929. This agreement was terminated under the use of all the provisions of the existing law on February 7, 1931. The court cannot see that there are any contractual relations left of the agreement of August 1, 1929, on June 21, 1934, the date of birth of the Railway Labor Act (New), in order to include plaintiffs under the language "including cases pending and unadjusted on June 21, 1934" of Sec. 3, First (i) of the Railway Labor Act (Title 45, U.S.C.A., Subsec. (i) of Sec. 153, National Railroad Adjustment Board).

At this juncture, however, the plaintiff is ready to seek to enter court. It follows we should study its means.

Subsection (p) of subdivision 1 of Section 153, Title 45 U.S.C.A., Railroad Labor Act (New), reads as follows: "If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated, and except that the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings, unless they accrue upon his appeal, and such costs shall be paid out of the appropriation for the expenses of the courts of the United States. If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit. The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board."

We are of the view that the mere fact that plaintiff has a favorable order from the National Railroad Adjustment Board does not give it, per se, a cause of action. The court may well analyze the Order and ascertain from its predicates, if, now, at this time, in this manner, there be a cause of action stated by the plaintiff. To the Order there must be also added all the other allegations of fact of the petition. These might add or detract from the legal value and significance of the Order.

This court disagrees with the findings of the Board on its conclusion as to law, first, holding that the agreement of August 1, 1929, is not concluded and dead on February 7, 1931, when the carrier rejected the submission of the differences to arbitration. Under the provisions of the Railway Labor Act of 1926, contractual relations were completely at an end. The Board makes the legal mistake of considering that the agreement of August 1, 1929, continues throughout. Notices of a new contract were posted to the employees. It was as much their burden as it was that of the carrier then to pursue the minutiae

of the provisions of the then applicable law.

The rules posted on September 1, 1931, are the rules controlling from that day to October 20, 1937, when the agreement of the latter date was made (Exhibit B).

Because of the alleged failure by the carrier to reinstate plaintiffs, it is alleged in the petition the aggregate loss "will greatly exceed the sum of $100,000.00." (Art. 12) This is for work not actually done by the plaintiffs. It is a sum reached by computing their salaries for the period of years they might have worked and deducting therefrom whatever sums they actually earned at other jobs. The court is unable to find where these plaintiffs and their supposed rights are mentioned directly or referred to by any possible inference in agreement of October 20, 1937 (Exhibit B). We fail likewise to find anything of the sort in the posted rules controlling the carrier and the employees from February 9, 1931, to October 20, 1937.

The court again disagrees with the Board's finding of law, contained in the following quotation from its Order: "There is evidence that a dispute existed on this railway to the extent that the President appointed a fact finding commission to report on the same, and while the case in question is not one which the fact finding commission investigated, it is one of the instances growing out of this dispute. Therefore, the claim was pending and unadjusted June 21, 1934."

This is too far-fetched an inference in 1938, based upon a law of 1934, to keep alive a contract born in 1929, definitely closed in 1931. We cannot accept such a finding or conclusion of law, unsupported by the facts, to form a cause of action in this suit.

Besides the above paragraph confesses its own weakness: "the case in question is not one which the fact finding commission investigated"; the "case in question" is plaintiff's present cause of action in this very suit. Therefore, the President's Fact Finding Commission did not consider at all these plaintiffs and their supposed cause of action.

Let us inquire what the court has said as to the meaning of subsec. (p) of subdivision 1 Sec. 153, Railroad Labor Act (New), Title 45 U.S.C.A., quoted above.

In the case of Cook v. Des Moines Union Ry. Co., 16 F.Supp. 810, at page 812, the district court, in passing on paragraph (p), said: "The conferring then of the power and jurisdiction on this court is as broad as it would have been had the petitioner here brought his action as an original civil suit for damages for breach of contract in this court or a court of competent jurisdiction. The only difference is that in this case the findings and order of the Adjustment Board shall be considered as prima facie evidence of the facts therein stated."

Further in the case, we have (16 F. Supp. at page 814): " * * * The case here is one which has long been known to the law as a breach of contract and, whether the provision with reference to the action before the District Court of the United States is considered as a review or the enforcement of an award only, it affords to the carrier, especially in this case, every right which it would have had the action been originally brought in this court for breach of contract, other than the question of evidence as to the presumption of the findings of the board, * * *."

The particular contract, because of the alleged breach of which petitioner sues, is the contract between petitioner and defendant of August 1, 1929. This is apparent from all of the allegations of the petition, and particularly from the allegations found in paragraph 8, where it is stated: " * * * All of the employees so advanced in position, or new employees hired by the defendant are junior in seniority to the employees named in Paragraph 4 hereof (plaintiffs), and the practice of the defendant in this regard constitutes a violation of the seniority rights of the said employees, and a violation of the Agreement of August 1, 1929. * * *"

And in paragraph 9, where it is alleged that the furloughed employees "requested the defendant to reinstate them to service according to their seniority rights under the Agreement of August 1, 1929, which requests were uniformly refused."

This was not a perpetual agreement, but itself provided for its termination, as follows: "This agreement becomes effective August 1, 1929, and it is mutually agreed that all former Rules, Rates and Regulations are void and that the provisions of this Agreement will not be retroactive, *nor will they be changed by either party without thirty days notice in writing.*" (Italics ours)

Under the general law, a contract, particularly one for personal services, may be terminated on such notice as the parties provide. If either party gives notice as is required—in other words, acts in accordance with the provision of the contract itself—the contract is at an end. When it is concluded, neither party is thereafter liable for future transactions thereunder and there can no longer be any action on the part of either person which would be a breach thereof. 13 C.J., Verbo Contracts, Secs. 631–640, pp. 606, 608.

In the case of A. Leschen & Sons Rope Co. v. C. T. Patterson & Co., Ltd., 130 La. 557, 58 So. 336, there was a contract with a provision that the agreement could be canceled by either party by giving thirty days' notice to the other party. The Supreme Court enforced this provision where the notice had been given, and held that the contract was terminated. Inasmuch as the contract between the plaintiff and defendant in the instant case was made in Louisiana, to be performed in Louisiana, we think that the case above cited is conclusive. See, also, F. W. Woolworth Co. v. Peterson, 10 Cir., 78 F.2d 47; Labatt v. Louisiana Adj. Bureau, La.App., 185 So. 702; Lyon v. Pollard, 20 Wall. 403, 22 L. Ed. 361.

The provisions of the agreement itself as to its cancellation would be solely controlling unless the action of the parties was limited by the Railway Labor Act in force at that time, Act of May 20, 1926, c. 347, 44 Stat. 577 et seq.

This statute provided that after the Mediation Board had been called in by either party, or otherwise, "In either event the said board shall promptly put itself in communication with the parties to such controversy, and shall use its best efforts, by mediation, to bring them to agreement. If such efforts to bring about an amicable adjustment through mediation shall be unsuccessful, the said board shall at once endeavor as its final required action (except as provided in paragraph third of this section and in section 10 of this Act), to induce the parties to submit their controversy to arbitration in accordance with the provisions of this Act." Section 5, First (c); 44 Stat. 580, 45 U.S.C.A. § 155.

As pointed out above, the Board of Mediation engaged actively in the matter for several months without success; and on February 6, 1931, the Mediator suggested that the matter be submitted to arbitration. Such arbitration was rejected by the carrier on February 7, 1931. This terminated the efforts required by law, and on February 9, 1931, the carrier promulgated its rates of pay and rules, and these became the contract with any employee who worked for the carrier thereunder.

These several studies of the facts and the conclusions of law to be deduced, which have formed the basis of the motion to dismiss for want of a cause of action, have led the court to sustain the motion. Judgment will be signed accordingly upon presentation.