## HANKS v. DELAWARE & H. R. CORPORATION.

District Court, N. D. New York.

Sept. 25, 1945.

Mulholland, Robie & McEwen, of Toledo, Ohio, and John J. Conway, of Albany, N. Y., for plaintiff.

Joseph Rosch, of Albany, N. Y. (Alfred Kelly and Earl Barkhuff, both of Albany, N. Y., of counsel), for defendant.

BRENNAN, District Judge.

This action is based upon the statutory provisions found in title 45 U.S.C.A. § 153(p), which is part of the legislation generally referred to as the Railway Labor Act, and has for its purpose the enforcement of an award made to plaintiff by the National Railroad Adjustment Board, hereafter referred to as the Board.

The award is the culmination of a dispute arising between plaintiff and defendant out of the interpretation or application of the provisions of a collective bargaining agreement entered into on June 25, 1940, between the defendant and the American Train Dispatchers' Association, which represented the craft or class of defendant's employees known as Train Dispatchers.

Plaintiff's claim arising out of such controversy was handled in the usual manner and submitted to the Board for decision as contemplated by the statute above referred to. The award to plaintiff followed the action of the Board and the required order directed to the defendant by the Board to make the award effective was issued in due course. The order was not obeyed and this litigation, as authorized by the above statute, followed.

The facts are not seriously disputed and they appear in the record based upon the stipulation of the parties, the comparatively brief testimony of witnesses and certain exhibits which were offered and received.

The plaintiff has been an employee of defendant since 1907. In the year 1913 he occupied the position known as Train Dispatcher or Trick Train Dispatcher. In 1918 he became Night Chief Dispatcher. He continued in that position until October 1, 1940, when the position was abolished by the action of defendant. Plaintiff's service was performed during all of that period at the office of defendant at Plattsburg, New York, with the exception of approximately two months when he was located at Albany, New York. From 1918 until July 1, 1940, his hours of employment were from seven P. M. to seven A. M. and on that date his hours of duty were changed from 7 P. M. to 3 A. M. and he was given the additional duties of a Trick Train Dis-

patcher on the northern end of the Plattsburg division of the railroad.

Prior to October 1, 1940, defendant gave notice that the position of Night Chief Dispatcher held by plaintiff was to be abolished as of October 1, 1940, and about the same time a new Trick Dispatcher's position was created in the Plattsburg office. The new position was open to bid by eligible employees, among them the plaintiff. Plaintiff by virtue of his seniority rights was awarded the position and concededly has since that time performed the duties of Trick Train Dispatcher pursuant to his bid. At the same time the classification of Night Chief Dispatcher was abolished a new position of Trick Train Dispatcher was added to defendant's payroll.

The terms of the bargaining agreement need not be discussed in detail herein. There is no dispute but that its scope is broad enough to cover and apply to night chief and trick train dispatchers. These terms are not defined, neither are the duties of the positions outlined. The agreement further provides that payroll classification shall be fixed in accordance with the duties performed, and that notice of the intended abolishment of permanent positions shall be given.

Attached to the bargaining agreement was a "Schedule of Rates of Pay for Positions Covered by this Agreement." Insofar as it is relevant to this case a portion is quoted below:

the raiload trackage making up the traffic division. This includes the supervision and direction of trick dispatchers in the case of emergency, detour or the movement of special trains accorded privileges to secure their speedy passage. His duties also included the ascertainment of the number of cars to be moved over his division during his tour of duty, and the ascertaining and arranging for the necessary power and personnel to accomplish such movement according to schedule. The night chief also has the duty of making out certain reports related to the equipment and freight within his jurisdiction, and any unusual occurrence within his tour of duty.

The proceedings heretofore had herein were based upon a demand that the position of Night Chief Dispatcher be reestablished and that plaintiff be paid the amount of his monetary loss computed as the difference in the pay schedule between the position of Night Chief and Trick Train Dispatcher since October 1, 1940. The award, the enforcement of which is sought in this action grants the requested relief.

Plaintiff contends that the duties of Night Chief Dispatcher still exist at the Plattsburg office; that in fact the plaintiff actually performs the greater portion of same during his tour of duty as Trick Train Dispatcher; that the change in payroll classification can not deprive the employee of his title and rate of pay to which his duties

| Division | Location | Positions | Rates of Pay | |
| --- | --- | --- | --- | --- |
| | | | Per Day | Per Mo. |
| Champlain | Plattsburg | 1 Night Chief | 11.69 | 305.00 |
| | | 2 First Trks. | 9.97 | 260.00 |
| | | 1 Second Trk. | 9.97 | 260.00 |
| | | 1 Third Trk. | 9.97 | 260.00 |
| | | 1 Relief | 9.97 | 260.00 |

"It is understood that the above positions and rates continue only so long as the necessity for the positions exists."

Evidence was received to show the commonly accepted meaning of the term "night chief dispatcher" in the railroad industry. This evidence substantially coincided with plaintiff's description of his duties while he occupied that position. Briefly, they may be summarized as general supervision of the movements of traffic over the division under his jurisdiction, and the supervision of trick train dispatchers who direct the movement of traffic over different portions of

entitle him, nor can the classification be abolished as long as the duties are being performed.

Defendant contends that the abolishment of the position of Night Chief Dispatcher is a function of management; that the bargaining agreement contemplated that positions would continue only as long as necessity therefor existed; that in fact no necessity for the position of Night Chief

existed and that the duties thereof were abolished and discontinued.

The issue presented concisely stated involves a determination as to whether or not the abolishment of the position of Night Chief Dispatcher held by plaintiff constitutes a violation or breach of the collective bargaining agreement.

Neither party contends that the positions contained in the schedule, which is part of the bargaining agreement, are permanent in the sense that they can not be abolished. The language contained in the schedule itself indicates clearly that the position may be abolished by the defendant when the need or necessity therefor no longer exists.

The decision of this case then turns entirely upon the determination of the question of fact as to the necessity of continuing the position of Night Chief Dispatcher in the Plattsburg Office of defendant after October 1, 1940.

In approaching the question the Court has in mind the language of the statute, 45 U.S.C.A. § 153(p), to the effect that the findings and order of the Board shall be prima facie evidence of the facts therein stated. This provision is of little help in this particular case. The Board in its findings found only that it had jurisdiction, and that the claim should be sustained. Detailed findings of fact were not made, and the sustaining of plaintiff's award is more a conclusion than a finding. System Federation #59, etc., v. Louisiana & A. Ry., 5 Cir., 119 F.2d 509, at page 513.

■ This is a trial de novo. The action is comparable to an action brought for a breach of contract. Plaintiff makes a prima facie case without the aid of the statutory provision by showing the collective bargaining agreement, the existence of the position, the duties thereof, its abolishment and the continuance of such duties at the Plattsburg office.

To discuss in detail the evidence offered by the defendant would serve no useful purpose. It may be summed up by stating that it shows that all supervisory work formerly performed by the Night Chief has been transferred to the Chief Dispatcher, that any supervision exercised over or assistance and advice rendered by the plaintiff to other trick dispatchers, during plaintiff's tour of duty as a train dispatcher was gratuitous, without authority and was nothing more than the advice and assistance a skilled workman would ordinarily render a less experienced co-employee. As to the other duties of Night Chief such as the arranging for power and crews, this duty is now the duty of each trick train dispatcher within his own jurisdiction; that in fact same was performed, in part at least, by the Trick Train Dispatcher prior to the abolishment of the position of Night Chief Dispatcher; that reports, formerly required to be made by the Night Chief are now prepared by other employees as a part of their duties with the exception of a few reports which are negligible as far as time is concerned, and which are prepared by plaintiff in his position as Train Dispatcher.

Neither management nor labor, both charged with obligation of the successful operation of a business, can afford to maintain a useless position therein. The skill, initiative and capacity for responsibility of labor is not static. It may equal or exceed that of the foreman or supervisor of 1918. Business competition requires economy in operation, but it can not be secured by the breach of a bargaining contract.

■ The word "necessity" as used in the schedule attached to the bargaining agreement must be construed according to the circumstances and conditions shown to exist. The existence of the duties of the position is not conclusive in itself. Supervision over a single employee or single train movement may be unnecessary while a number of employees or the movement of a number of trains would necessitate such supervision. Here, the position of Night Chief Dispatcher at Plattsburg existed for a number of years. The personnel and number of train movements subject to such supervision increased rather than decreased, and new positions were created. The action of the defendant in changing the hours, increasing the duties of and finally abolishing the position of Night Chief, all within a short time after the execution of the bargaining agreement, raises the implication that the defendant's action was prompted by the "necessity" of the terms of the agreement rather than by the independent conclusion that the "necessity" for the position no longer existed.

The purpose of the Railway Labor Act is to provide for the settlement of disputes. Its plan of operation seems to stress negotiation and arbitration. The paid representatives apparently failed to agree upon a decision of the sharp concise question of fact involved. A referee was selected and the award followed, which upon its face is based upon " * * * the whole record and all of the evidence * * *."

164

It is clear that the finding and award of the Board in this case must be given weight by the trial court. Liberally interpreted they mean that the showing of lack of necessity for the continuance of the position of Night Chief Dispatcher at Plattsburg, N. Y. was insufficient to establish it as a fact. This is fairly comparable to expert testimony. Washington Terminal Co. v. Boswell, 75 U.S.App.D.C. 1, 124 F.2d 235, at page 241.

The conclusion is reached that the action of the defendant in abolishing the position of Night Chief Dispatcher at the Plattsburg, N. Y. office of defendant, as of October 1, 1940, constitutes a breach of the bargaining agreement, and the plaintiff is entitled to the relief demanded.