## CROWLEY v. DELAWARE & H. R. CORPORATION.

District Court, N. D. New York.

Oct. 6, 1945.

Mulholland, Robie & McEwen, of Toledo, Ohio, and John J. Conway, of Albany, N. Y., for plaintiff.

Joseph Rosch, of Albany, N. Y. (Alfred Kelly and Earl Barkhuff, both of Albany, N. Y., of counsel), for defendant.

BRENNAN, District Judge.

This action is based upon the statutory provisions found in title 45 U.S.C.A. § 153(p), which is part of the legislation generally referred to as the Railway Labor Act, and has for its purpose the enforcement of an award made by the National Railroad Adjustment Board, hereinafter referred to as the Board.

The award is the culmination of a dispute arising between plaintiff and defendant out of the interpretation or application of the provisions of a collective bargaining agreement entered into on June 25, 1940, between defendant and the American Train Dispatchers' Association, which represented the craft or class of defendant's employees known as Train Dispatchers.

The controversy was handled in the usual manner and submitted to the Board for decision as contemplated by the statute above referred to. The award followed the action of the Board and the required order directed to the defendant by the Board to make the award effective was issued in due course. The order was not obeyed and this litigation, as authorized by the statute, followed.

The facts are not seriously disputed, and they appear in the record based upon the stipulation of the parties, the comparatively brief testimony of witnesses and certain exhibits which were offered and received.

Plaintiff has been an employee of the defendant since 1914. Beginning in 1916 he occupied the position known as "Train Dispatcher" or "Trick Train Dispatcher," and in 1928, he was promoted to the position of Night Chief Dispatcher at the Carbondale, Pennsylvania office of the defendant railroad. His hours of duty were from 8:30 P. M. to 8:30 A. M. On July 1, 1938, he took over the duties of a trick train dispatcher. His hours of duty were from 11:00 P. M. to 7:00 A. M. and he continued in that position until March 16, 1940, during which period he received the pay of night chief. On March 16, 1940, the position of Night Chief was abolished and in accordance with an arrangement respecting seniority rights of employees, the plaintiff then bid in or took over a first trick dispatcher's tour of duty from 7:00 A. M. to 3:00 P. M., which position he has occupied up to the present time. Since March 16, 1940, he has performed none of the duties originally performed by the Night Chief.

The terms of the bargaining agreement need not be discussed in detail herein. There is no dispute but that its scope is broad enough to cover and apply to Night Chief and Trick Train Dispatchers. These terms are not defined; neither are the duties of the positions outlined. The agreement provides that payroll classification of an employee shall be determined in accordance with the duties performed.

The proceedings heretofore had herein were based upon a demand that the position of Night Chief Dispatcher be re-established, and that plaintiff be paid the amount of his monetary loss computed as the difference in the pay schedule between the position of Night Chief and Trick Train Dispatcher since October 1, 1940. The award, the enforcement of which is sought in this action, grants the requested relief in part—to wit, it directs that the position of Night Chief Dispatcher be re-established or restored at the Carbondale, Pa., office, but denies plaintiff's claim for reimbursement of monetary loss.

This case differs from the case of Hanks v. Delaware & Hudson Railroad Corporation, D.C., 63 F.Supp. 161, in two important particulars; Namely, (a) the plaintiff has not performed any of the duties of Night Chief since the bargaining agreement became effective, and (b) the schedule attached to the bargaining agreement contained no reference to the position of Night Chief Dispatcher at the Carbondale office. This is accounted for by reason of the fact that no such position did in fact exist at the time of the execution or effective date of the bargaining agreement.

Plaintiff bases his right to the relief sought upon the provisions of Article 1(a) and (b), of the bargaining agreement, which is quoted below.

"Article 1.

"(a) The term 'Train Dispatcher' as hereinafter used shall be understood to include Night Chief, Trick, Relief and Extra Dispatchers.

"(b) Where the payroll classification does not conform to foregoing section, any employee performing service as specified therein shall be reclassified in accordance therewith."

As stated above, the terms or titles used in Section (a) above quoted are not defined but evidence was received to show the commonly accepted meaning of the term

"Night Chief Dispatcher" in the railroad industry. This evidence substantially coincided with plaintiff's description of his duties while he occupied that position. Briefly, they may be summarized as general supervision of the movements of traffic over the division under his jurisdiction, and the supervision of Trick Train Dispatchers who direct the movement of traffic over different portions of the railroad trackage making up the traffic division. This includes the supervision and direction of Trick Dispatchers in the case of emergency, detour or the movement of special trains accorded privileges to secure their speedy passage. His duties also included the ascertainment of the number of cars to be moved over his division during his tour of duty, and the ascertaining and arranging for the necessary power and personnel to accomplish such movement according to schedule. The Night Chief also has the duty of making out certain reports related to the equipment and freight within his jurisdiction, and any unusual occurrence within his tour of duty.

Plaintiff contends that the duties and services of the position of Night Chief Dispatcher at the Carbondale office of the defendant exist and are being performed at that office, and that the defendant's refusal to establish a payroll classification of Night Chief Dispatcher at that office constitutes a breach of the bargaining agreement.

It is defendant's contention that the bargaining agreement conclusively fixed the payroll classification of the positions existing in the Carbondale office as of the effective date thereof (April 1, 1940); that there has been no change in the duties of any employee at that office since that date, and that no employee has performed any duties of a Night Chief Dispatcher at that office since that date.

■ The plaintiff by this action seeks the legal determination that the award made is in accordance with his legal rights. Washington Terminal Co. v. Boswell, 75 U.S.App.D.C. 1, at page 10, 124 F.2d 235, at page 240. Such legal rights must be determined in accordance with the law of contracts (System Federation No. 59, etc., v. Louisiana & A. R. Co., D.C., 30 F.Supp. 909, affirmed 5 Cir., 119 F.2d 509), and to recover here plaintiff must establish that the bargaining agreement of June 25, 1940, has been breached by the defendant.

The issue here presented involves a determination as to whether or not defendant's refusal to create the payroll classification of Night Chief Dispatcher at Carbondale constitutes a breach of the collective bargaining agreement insofar as it affects the rights of the plaintiff.

■ In approaching the question the Court has in mind the language of the statute, 45 U.S.C.A. § 153(p), to the effect that the findings and order of the Board shall be prima facie evidence of the facts therein stated. This provision is of little help in this particular case. The Board in its findings found only that it had jurisdiction and that the claim should be sustained in part. Detailed findings of fact were not made, and the sustaining of plaintiff's award is more a conclusion than a finding. System Federation No. 59, etc., v. Louisiana & A. R. Co., 5 Cir., 119 F.2d 509, at page 513.

While it is stipulated that the plaintiff is the party for whose benefit the award was made so as to afford the statutory basis for this action, recourse must be had to the agreement itself to ascertain defendant's legal obligation to the plaintiff thereunder.

■ The obligation which is applicable here may be stated generally as follows. Every employee of the defendant must receive a payroll classification in accordance with the duties he performs. There is no obligation on the defendant to create or re-establish any particular position. Plaintiff's legal rights are invaded only when he fails to receive the payroll classification to which he is entitled by reason of duties performed. The contention that the duties of night chief dispatcher still exist at Carbondale and are being performed by employees other than the plaintiff is not available here. To sustain such a contention would require that there be read into the agreement a provision to the effect that whenever the duties of a position exist then a corresponding payroll classification must be designated. The agreement contains no such provision.

"We are not at liberty to revise while professing to construe." Sun P. & P. Ass'n v. Remington P. & P. Co., 235 N.Y. 338, at page 346, 139 N.E. 470, at page 471.

■ It is the performance of the duties, not the existence thereof, which is

the essential preface to defendant's obligation to reclassify and to plaintiff's right to maintain this action. Evidence was offered by the plaintiff and disputed by the defendant by which plaintiff sought to establish that duties performed formerly by the plaintiff as Night Chief Dispatcher were now performed by employees of defendant other than the plaintiff. To determine that controversy is unnecessary for in any event it would not assist plaintiff in establishing his cause of action. Necessity for the position of Night Chief Dispatcher is not an issue here, as it was in the Hanks case, although the Board seems to have reached its conclusion upon that assumption, ignoring the essential difference between the two cases.

The defendant is entitled to a judgment dismissing the complaint.