JOHN G. RYAN *vs.* JOHN J. HAYES & another.

Suffolk.    October 16, 17, 1922. — November 29, 1922.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Unlawful Interference.    Labor and Labor Union.*

At the hearing of a bill in equity against officers of a labor union to enjoin them from "interfering, or from combining, conspiring or attempting to interfere with the plaintiff in obtaining and holding employment" with a certain employer of spongers of cloth, the following facts appeared: The defendants had threatened no strike and had entered into no conspiracy to prevent the plaintiff from working. The plaintiff, desiring to obtain employment with the employer as a teamster, was employed temporarily as a sponger upon condition, "that after he had obtained some knowledge of the business and other requirements before mentioned, as a teamster, he would be employed as such" and was told by the employer that he "must make application to the" defendants' "union and become a member," because of an agreement between the employer and the defendants' union that he would employ only "union men." The plaintiff made application for membership in the union and, when there was

in force a vote that "all jobs be given out by the business agent in rotation," his application was accepted and at the same time the union voted that he be placed at the "bottom of the list for work." The union agent in accordance with the votes placed the plaintiff "at the foot of the work list, being fourth on the list of spongers," and the employer accordingly refused him immediate employment. The plaintiff's application for membership in the union originally showed his "branch of trade" to be that of a "teamster," which was changed to read "sponger" because the union had no such classification as "teamster," the plaintiff consenting to the change "in order that he might become a member . . . and . . . follow out his vocation as teamster, for which he made application to" the employer. The employer had not been informed of the vote placing the plaintiff at the bottom of the list to be employed until after the plaintiff was admitted to membership in the union and the plaintiff had refused to acquiesce in the decision of the defendants and had brought suit. *Held,* that the suit could not be maintained.

BILL IN EQUITY, filed in the Superior Court on April 13, 1921, against John J. Hayes and Alfred J. Bowden "individually, and as they are officers of Local No. 181 of the Amalgamated Clothing Workers Union of America, a voluntary, unincorporated association," seeking a decree enjoining the defendants "from interfering, or from combining, conspiring or attempting to interfere with the plaintiff in obtaining and holding employment, particularly with" one George Adams, who was engaged in the management and operation of a factory or shop in Boston for the preparation or treatment of cloth goods, called "steam sponging," "and from intimidating or threatening the said Adams or other persons who might employ or desire to employ the plaintiff, and from in any way hindering the plaintiff in obtaining or holding employment," and for damages.

In the Superior Court, the suit was referred to a master. Material facts found by the master in an original and a supplemental report are described in the opinion. After the filing of the reports, the suit was heard by *Sisk,* J., by whose order there was entered a final decree dismissing the bill with costs. The plaintiff appealed.

*G. S. Ryan,* for the plaintiff.

*S. R. Cutler,* for the defendants.

BRALEY, J. The plaintiff alleges that the defendants "individually, and as they are officers of Local No. 181 of the Amalgamated Clothing Workers Union of America, a voluntary . . . association," unlawfully prevented him from being employed in his occupation of teamster, and, after he had become a member

of the union, unlawfully deprived him of his employment. The question whether these allegations are established depends upon the master's report.

The local union referred to was commonly known as a "spongers' union." It consisted not only of those working on "sponging machines," but "men who did general work." The business carried on by one Adams of sponging cotton and woollen cloth necessitated the employment of teamsters to collect and return material belonging to his customers. "The men employed as teamsters were required not only to have some experience in the handling of teams, but also a general knowledge of the goods they were handling, of the business, and the people with whom their employers were dealing." The plaintiff, a non-union workman, by occupation a teamster, applied to Adams for work and was temporarily hired as a "sponger" upon condition, "that, after he had obtained some knowledge of the business and other requirements before mentioned, as a teamster, he would be employed as such." But it was also stated that he "must make application to the union and become a member" because of an existing parol agreement of Adams to employ only "union men." The plaintiff whose co-workers were union men was under no obligation to enter Adams's service under such conditions, but having voluntarily entered into the contract, which was not unlawful, he was bound by its terms. *United Shoe Machinery Corp.* v. *Fitzgerald,* 237 Mass. 537, 541. The master finds, that "Very soon after the plaintiff went to work, it was apparent that the other employees . . . knew that a non-union man was working with them, and the purposes for which he was so employed, — to fit him for the position of teamster, — . . . and much dissatisfaction was caused" which was communicated to the defendants' officers, and especially to its business agent, the defendant Hayes, and called to the attention of Adams, who was informed by the defendant Hayes as well as members of the union, that the "members of the . . . union" would not remain if the plaintiff continued in his employment. While the managing officers of the union knew that Adams desired to secure a competent teamster, they did not furnish, or offer to furnish, an employee who would do the work, and at a meeting duly held it voted, "that the matter of a non-union man working in Adams

Co. be referred" to the business agent, the defendant Hayes, with whom was associated one Anderson, "with full power." A conference followed at which Adams was asked "whether he intended to abide by his agreement . . . as to maintaining a closed shop." Adams replied that he intended to keep it, and "that his employment of the plaintiff was in accordance with that understanding, with the idea that the plaintiff should become a member of the union." But after the interview, and on the same day he wrote the defendant Hayes asking permission to retain the plaintiff "as a teamster in our employ." The union to which the letter was presented for action, or report, voted, "that the action of the spongers' and examiners' division of this local refusing admission to additional new members on the ground that the present membership would be seriously injured by the admission of extra workmen be and is hereby approved, and that the decision of the members of the spongers' division to refuse permission to the Adams and Bay State Concern to employ non-Amalgamated Members be sustained." The plaintiff, having been informed of this vote and after a conference with Hayes, made application "in regular form," describing himself as a "teamster," for admission, and, between the time of the conference and the date of his application, it was agreed by Adams and the defendants that he "was not to work until he was admitted . . . and Adams notified the plaintiff to that effect." No strike however had been threatened nor any intimidation practised. The action of the defendants under the circumstances described cannot be considered as a concerted and successful scheme to prevent the plaintiff from securing employment. *W. A. Snow Iron Works, Inc.* v. *Chadwick*, 227 Mass. 382, 389. *Shinsky* v. *O'Neil*, 232 Mass. 99. The course taken by the plaintiff was in accordance with the precedent condition upon which his right to employment had been rested. It is evident from the request of Adams, and the stipulation when the plaintiff entered upon his work, that permanent employment could not have been obtained even if the union had not protested and demanded that Adams should act in conformity with his agreement with the union.

We now come to the subsequent events which substantially nullified whatever advantage in obtaining work the plaintiff may

have gained by his membership. The indorsement on his application card showed his "branch of trade" was that of a "teamster." The proceedings which followed all refer to him as a "teamster," and it was admitted that the plaintiff was qualified not only as a teamster, but also was fitted for the work of a sponger. But the defendant Hayes immediately after his admission suggested that the word "teamster" on the application card should be changed to that of "sponger," because the local union "had no such classification as 'teamsters.'" The plaintiff having consented "in order that he might become a member . . . and . . . follow out his vocation as teamster, for which he made application to Mr. Adams," the substitution was made, and at a meeting of the union it was accepted. The plaintiff was not misled nor overreached by the change which placed him in the same position that he would have been in if his "branch of trade" had been first described as that of a sponger. A "membership book" which contained the constitution and by-laws of the central union of which the local union was a branch was given the plaintiff in conformity with the regular procedure for the admission of members. The constitution refers to the order of business. No provisions are found for the government of local unions, except that article twelve reads, "Each Local Union shall have its own by-laws as they may consider necessary, provided, however, that they shall not conflict with this Constitution or by-laws of the Central Body of this organization." But no by-laws or rules of the local union were offered in evidence, nor does the constitution provide for an appeal to the central organization by an aggrieved member of the local union. A vote of which the plaintiff had no notice was passed at the meeting when his application was accepted, that "John G. Ryan be placed on bottom of the list for work." The defendant Hayes thereupon having informed the plaintiff that he could return to work, although Anderson "told him to the contrary," he went to the place of business of Adams and began work "on a machine and continued working a couple of hours when he was called to the office and put in connection with Mr. Hayes by phone, and . . . informed that he could not work and . . . to come and see Mr. Hayes." Adams, who was then informed by Anderson "that the plaintiff could not be kept at work, gave assurance . . . that he would not employ the

plaintiff under the then existing conditions." The plaintiff, at this time a member of the union, had complied with all requirements, and had been accepted as an employee by Adams who had acted in conformity with his agreement with the union. If the report of the facts ended at this period, the question of the right of the plaintiff to the uninterrupted benefit of his contract, and to be protected in the enjoyment of that right without being subjected to the intentional interference of Hayes and Anderson representing the union, whereby he was deprived of employment, would have to be determined. *W. A. Snow Iron Works, Inc.* v. *Chadwick*, 227 Mass. 382, 389.

The master, however, goes further, and reports that shortly thereafter, the plaintiff had an interview with Hayes at which he endeavored to ascertain whether there were any by-laws, rules or regulations of the local union applicable to his situation and made demand therefor. But even if as we have seen there were no by-laws, the union had voted prior to the plaintiff's admission that "all jobs be given out by the business agent in rotation," and by this vote, construed in connection with the vote placing him at the "bottom of the list for work," the defendant Hayes had authority to act as he informed the plaintiff by placing his name "at the foot of the work list — being fourth on the list of spongers," and that "he would have to take his turn in the order of that list before he could be placed to work." The plaintiff failed to offer any evidence that when he applied for admission, and during the proceedings upon his application, he could not have obtained full information of the earlier vote conferring upon Hayes and Anderson power to act in determining his rank and retention as a union employee on the observance by Adams of his contractual relations with it. It is immaterial that Adams had not been informed of this vote until after the plaintiff had been admitted, or that the plaintiff refused to acquiesce in the decision and brought suit. In joining the union he "engaged to be bound by its rules and subjected himself to its discipline." *Shinsky* v. *Tracey*, 226 Mass. 21, 22.

The master's conclusion in his original report, which is not modified by his supplemental report, is, "I find as a fact that there was no conspiracy on the part of the officers or members of this defendant . . . to prevent the plaintiff

from working." It is conclusive, and the decree dismissing the bill should be affirmed. *East Tennessee Land Co. v. Leeson,* 183 Mass. 37.

*Ordered accordingly.*