TIMOTHY DONOVAN & others vs. BARNARD F. TRAVERS & others.

Suffolk.    March 6, 1933. — January 18, 1934.

Present: RUGG, C.J., WAIT, FIELD, DONAHUE, & LUMMUS, JJ.

*Labor Union. Contract*, Construction, Of employment. *Evidence*, Extrinsic affecting writing.

A voluntary, unincorporated national union of railroad workmen, called a brotherhood and having subordinate lodges in different localities, made, and changed from time to time, an agreement with a railroad corporation in this Commonwealth containing among others a provision that grievances which should arise between the members of the brotherhood and the corporation should be referred to and adjusted by a general grievance committee created under the constitution and rules of the brotherhood; and also, in an article numbered 2 and an addendum thereto, not made applicable to switch tenders by any agreement executed before October 25, 1922, a provision that the rights of yardmen were confined to their respective yards "except where yards are abolished; men so affected will have seniority rights in other yards on that division"; and (effective May 30, 1924) "yardmen will have interchangeable rights in the yards on their respective divisions. Rights of yardmen will be preserved as in effect prior to May 30, 1924, in their respective yards, but yardmen will begin to acquire seniority in other yards on their divisions as of May 30, 1924." By reason of a decision finally made by the general grievance committee, certain switchmen who, upon the abolishment of a yard, sought employment in another yard on the basis of seniority antedating October 25, 1922, were refused employment there. Being wrongly deprived of their right of appeal from that decision, they sought redress by suit in equity, in which a master, receiving extrinsic evidence, found that the proper interpretation of the "law" of the brotherhood had been given by the general grievance committee, and that the action taken by the railroad corporation and by the committee members was all in good faith; and a final decree was entered dismissing the bill. The plaintiffs appealed. *Held*, that

(1) The rights of the plaintiffs were not fixed by the terms of the agreement between the union and the railroad corporation as it stood when the several plaintiffs entered upon their service, interpreted only in the light of the then circumstances; but, as the agreements changed from time to time, the modifications and possible changes in interpretation of terms agreed upon by the union and the railroad corporation modified and affected the individual contracts of those already in the corporation's employ;

(2) The "law" of the brotherhood was a fact to be determined on the evidence, and, the master's findings not being inconsistent with one another, they must stand;

(3) The general grievance committee was not to be held to the rules of technical court procedure in reaching its decision; and therefore the fact that the brotherhood's general chairman, in discussing the plaintiffs' rights before the committee, used a letter of the brotherhood's president, which he considered as a ruling of law by him binding on the committee, did not invalidate the committee's decision, especially as the master found that the committee members in good faith reached their decision without giving controlling weight to the letter;

(4) The language of article 2 of the agreement was not so free from technicality and uncertainty that no extrinsic evidence of its meaning was admissible, and the consideration of such evidence by the master was proper;

(5) There was no illegality in the interpretation of the article as found by the master: the plaintiffs were not deprived of property rights thereby;

(6) No error appeared, and the dismissal of the bill was proper.

BILL IN EQUITY, filed in the Superior Court on April 30, 1931, and afterwards amended, described in the opinion.

The suit was referred to a master. Material facts found by him are described in the opinion. A brief statement by him of the case and of his rulings was as follows:

"The question involved is whether a rule agreed upon between the Brotherhood of Railroad Trainmen and the Boston and Maine Railroad, giving 'seniority rights' in other yards to yardmen whose yards are abolished, gave the plaintiffs, switch tenders whose yard was abolished, rights in other yards based on seniority extending back prior to October 25, 1922.

"This question was decided adversely to the plaintiffs by the General Grievance Committee. They then attempted to appeal to the Board of Directors. Their right of appeal was denied and their appeal was not entertained.

"My principal conclusions of law, and of mixed law and fact, are as follows:

"1. The right of appeal was erroneously denied to the plaintiffs and this was a serious denial of justice.

"2. Therefore the plaintiffs are entitled to have the merits of their case considered by the court.

"3. The rule in question was first made applicable to switch tenders on October 25, 1922.

"4. 'Seniority rights' is a term of such general meaning that extrinsic evidence of the specific and technical sense in which it was used is admissible.

"5. Upon conflicting evidence, and largely upon the authority of certain decisions of Brotherhood officials and tribunals rendered since October 25, 1922, I decide that the words 'seniority rights,' in the rule under consideration, mean seniority rights extending back only to October 25, 1922.

"6. If I were to exclude from consideration all extrinsic evidence, or if I were to exclude from consideration certain Brotherhood decisions rendered since October 25, 1922, my decision would be that the seniority rights of the plaintiffs extended back to their first employment as switch tenders by the Boston and Maine Railroad."

From an interlocutory decree overruling exceptions by the plaintiffs to the report and a final decree dismissing the bill, entered by order of *Donnelly,* J., the plaintiffs appealed.

*M. J. Robinson,* (*F. W. Mansfield* with him,) for the plaintiffs.

*T. C. O'Brien,* (*J. E. Keefe, Jr.,* with him,) for the defendants.

WAIT, J.   The plaintiffs are three men formerly employed as switch tenders in the Lynn yard of the Boston and Maine Railroad.   The defendants are the railroad corporation, and the members of the general grievance committee of the Brotherhood of Railroad Trainmen, alleged to be a voluntary, unincorporated association existing by virtue of an agreement between the brotherhood and the railroad corporation.   The chairman, Travers, the vice-chairman, Wood, and the secretary, Burns, are named as defendants who fairly represent the remaining defendants, numerous unnamed members of the committee.   The proceeding is a bill in equity seeking specific performance of an agreement between the union and the railroad corporation.   The union is not made a party.   In its essence the bill seeks an interpretation of the agreement differing from that decided by the committee and acquiesced in by the railroad corporation to be the proper interpretation; and injunctive

relief to secure restoration to the plaintiffs of rights claimed
to belong to them but to have been taken away by action
in accord with the wrongful determination of the committee.
Under a prayer for general relief damages are claimed. No
demurrer was filed, and no question of general equity
jurisdiction was raised by the pleadings. The case was
referred to a master who, by consent, made rulings of law
as well as findings of fact. Any defence that the plaintiffs
had failed to exercise their rights of appeal within the
brotherhood was waived.

Material facts are as follows: The Brotherhood of Rail-
road Trainmen is a voluntary, unincorporated association
of railroad workmen, having subordinate lodges in different
parts of the United States, with a grand lodge located at
Cleveland, Ohio. It was organized in 1883. The plain-
tiffs are members of Lodge 749, located at Lynn, Massa-
chusetts. For many years there has been an agreement,
changed from time to time, between the brotherhood and
the Boston and Maine Railroad made for the mutual bene-
fit of the railroad corporation and of all members of the
brotherhood employed upon it. A general grievance com-
mittee, created under the constitution and rules of the
brotherhood, is charged with the duty of considering and
adjusting complaints and grievances which arise between
the members and the railroad corporation. By the agree-
ment, such grievances are to be referred to and adjusted
by this committee. Although nowhere distinctly so stated,
it is manifest from the record and the briefs that the terms
of the agreement according rights to employee members by
the provisions of the agreements in force from time to time
were regarded by both railroad corporation and employees
as forming part of their several and individual contracts of
employment. The classes of employees entitled to rights
under the varied agreements differed from time to time.
A provision of the agreement in force when the events took
place out of which the present controversy arises was as
follows: "Article 2. The rights of yardmen will be con-
fined to their respective yards, except where yards are
abolished; men so affected will have seniority rights in

other yards on that division. . . . Addendum to Article 2 (A) Effective May 30, 1924, yardmen will have interchangeable rights in the yards on their respective divisions. Rights of yardmen will be preserved as in effect prior to May 30, 1924, in their respective yards, but yardmen will begin to acquire seniority in other yards on their divisions as of May 30, 1924. . . . Doubtful or disputed questions arising will be submitted by Superintendent to General Superintendent, and by Local Chairman to their General Chairman, and be adjusted mutually by General Superintendent and General Chairman." The agreement, among other things, deals with rights of preferential employment, dependent, in part, upon "seniority" — a term not defined in the agreement but having to do with length of service. Article 2 was not made applicable to switch tenders by any agreement executed before October 25, 1922. No copy of any agreement containing all its terms was in evidence or is before us.

The Lynn yard as a place of employment for stationary switch tenders such as the plaintiffs, who had been employed there for terms of service beginning in 1894, 1900, and 1909, was abolished in 1930 by the installation of interlocking switches operated from a tower. The plaintiffs sought employment in another yard on the same division at Peabody. At first, convinced that the plaintiffs' contention of their rights of seniority was correct by statements of General Chairman Travers reinforced by those of one Kelley, the business representative of Lodge 749, the railroad corporation made the desired appointments; and, in doing so, was forced to displace three other switchmen already at work in the Peabody yard whose seniority there began to run before October 25, 1922. One of these displaced switchmen claimed and was given employment as switchman in the Lawrence yard of the same division, ousting other aspirants from the Lawrence yard on the basis of seniority computed as that of the plaintiffs had been. Although Lodge 749 had stood behind the plaintiffs, the lodge at Lawrence took up the cause of the Lawrence switchmen, and complained to the general grievance com-

mittee. That committee considered the grievance, and decided that the plaintiffs were wrong in their claim of seniority. Consequently the railroad corporation, treating the controversy as one within the brotherhood to be controlled by the brotherhood's decision, reinstated the men who had been superseded in Lawrence and Peabody, and removed the plaintiffs. The action so taken by the railroad corporation is the thing here complained of — the action this court is asked to undo. Before the decision of the general grievance committee, Travers had reported the circumstances and his action to the president of the brotherhood and asked his advice. He received a letter from the president which disapproved his course. The letter took the position that, in line with the brotherhood's policy, since the provision of article 2 conferring the right to switch tenders "to exercise seniority in other yards in event the job in the yard in which they were employed was abolished" was not extended to switch tenders until October 25, 1922, the switch tenders were not acquiring seniority in any other than their own yard prior to October 25, 1922. This letter he showed to members of the committee; he considered it as a ruling of law by the president binding upon them; and he used it in bringing the committee to the decision reached by them. That decision was, however, the master found, a decision of the committee members, reached without giving controlling weight to the president's letter. The plaintiffs, by what the master found to be an erroneous decision of brotherhood law, were deprived of an appeal claimed by them to the board of directors from the decision of the general grievance committee, and were thus injured; so that under ordinary equity rulings (see *Hickey* v. *Baine*, 195 Mass. 446, 452) they acquired a right of resort to the courts from which, ordinarily, as to matters within the powers of the brotherhood, they would have been cut off by the prohibition of such resort by the laws of the brotherhood binding upon them because of their membership in the brotherhood and their assent to be bound by its constitution and laws. See *Richards* v. *Morison*, 229 Mass. 458, 461, and cases cited;

*Snay* v. *Lovely*, 276 Mass. 159, 163. The master found that the action taken by the railroad corporation and by the committee members was all taken in good faith. He considered various actions and decisions of the brotherhood in other cases put in evidence before him and recited at considerable length in his report; and heard experts thereon. He found the decision here reached by the committee to be good law of the brotherhood.

All exceptions to his report were overruled. A final decree was entered dismissing the bill. The plaintiffs appeal from the interlocutory decree confirming the report, and from the final decree. They argue, however, only the construction put upon article 2 which, they contend, has always, even before October 25, 1922, applied to switch tenders, and when expressly made applicable to them on that date gave them "full seniority rights in other yards on their division in the event their yard was abolished."

We pass over difficult questions of parties and of equity jurisdiction which have not been raised by the pleadings nor discussed in argument; and address ourselves to the merits of the decrees. The substantial issue is whether the rights of the plaintiffs are fixed by the terms of the agreement between the union and the railroad corporation as it stood when the several plaintiffs entered upon their service, interpreted only in the light then available; or whether as the agreements changed from time to time, the modifications and possible changes in interpretation of terms agreed upon by the union and the railroad corporation modified and affected the individual contracts of those already in the corporation's employ. We think the latter to be the proper position. The transaction is an agreement between an employer and a labor union designed by the latter to benefit itself and those members who enter the employer's service. The employee stands no higher than the union. If it modifies the agreement with the employer, the employee must acquiesce. In no correct sense is the union an agent. It is a principal. See *Whiting Milk Co.* v. *Grondin*, 282 Mass. 41.

All the evidence is not reported. The master's findings

that the defendants throughout have acted in good faith, and that the committee have applied correctly the law in the interpretation of the terms of the agreement, as findings of fact, must stand. They are not inconsistent, nor clearly wrong. The "law" of the brotherhood so far as material is, here, matter of fact; and is to be found as matter of fact from the evidence by the master. Compare *Malloy* v. *Carroll*, 272 Mass. 524.

. A controversy over the respective rights of employees at work in the yards at Lawrence and Peabody in contra-distinction to the rights of those formerly employed in the abandoned yard at Lynn was, properly, presented to the general grievance committee for its decision. The correct determination depended upon the construction to be given article 2 of the agreement between corporation and brother-hood. It is settled law that members of an unincorporated, voluntary association, like the brotherhood, are bound by the determination of the association's tribunals if the decision is reached after observance of the formalities it prescribes, after fair opportunity for presenting their case, where there has been no excess of jurisdiction, no bad faith or capricious, unreasonable or arbitrary action. *Richards* v. *Morison*, 229 Mass. 458, 461. Whatever may have been the errors of the brotherhood with reference to the appeal to the board of directors later sought by the plaintiffs, nothing appears from the report to show that the decision here reached by the committee was invalidated for any of the causes recited. The use of the president's letter did not render the decision null. Such a tribunal is not held to the rules of technical court procedure. *Snay* v. *Lovely*, 276 Mass. 159, 163. The defendant Travers as chairman was not in fault in seeking information from the president in regard to the propriety of the assent which he had given to the transfer of the plaintiffs with the rights he then considered them to have, and its consonance with the brotherhood's law and policy; nor in using the answering letter to assist himself and his fellow committeemen in making a proper decision when the question was duly before them.

We think the language of article 2 was not so free from technicality and uncertainty that no extrinsic evidence of its meaning was admissible. *Chaton Fibre Co.* v. *Eaton,* 255 Mass. 136. *Linton* v. *Noonan,* 238 Mass. 31, 40. *Smith* v. *Vose & Sons Piano Co.* 194 Mass. 193. On the contrary we think it presented, and presents, a difficult question of interpretation and of the positive law of the brotherhood. If, through fault of the brotherhood, the plaintiffs lost the opportunity for a decision of the board of directors on this question, they have obtained through the courts of this Commonwealth a reconsideration of it by the master, and a ruling that article 2 does not give them the rights which they claim. They are not injured, in any legal sense of the word, although they lose. The master was right in hearing extrinsic evidence. Although a right of seniority such as is here asserted is undoubtedly a valuable property, it arises only from agreement. We see no illegality in a rule that one who acquires seniority in a particular place and who is entitled to carry it with him to another, must reckon seniority in that other place from the time at which the right to its exercise in that other place accrued to him. One is not deprived of property thereby.

We have considered the exceptions to the report and find no error in overruling them. The final decree follows from the findings of fact. Neither railroad corporation nor committee is at fault. The committee's decision properly interprets the contract of employment as it stood when the action challenged was taken, an interpretation found as fact to be the law of the union applicable in the circumstances, and an interpretation which the railroad corporation is satisfied to accept. No error appears.

*Decrees affirmed.*