SYSTEM FEDERATION NO. 59 OF RAILWAY EMPLOYEES DEPARTMENT OF AMERICAN FEDERATION OF LABOR v. LOUISIANA & A. RY. CO.

No. 9583.

Circuit Court of Appeals, Fifth Circuit.

May 2, 1941.

Rehearing Denied May 31, 1941.

Franklin Jones and Clay A. Brian, both of Marshall, Tex., and Floyd D. Culbertson, Jr., of Minden, La., for appellant.

T. W. Holloman, of Alexandria, La., and A. L. Burford, of Texarkana, Ark., for appellee.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Plaintiff, a federation of craft unions, members of which are shop craft employees, is the duly and legally selected representative of all the members of defendant's shop craft employees. As such, it brought this suit in behalf of its members named in the petition. Brought by authority of the National Railway Labor Act, Subdivision 1(p),[1] Sec. 153, Title 45 U.S.C.A., pursuant to an award of the National Railroad Adjustment Board, it was for loss of wages resulting from a claimed denial of, and for restoration to, seniority rights, accorded under Rules 8[2] and 9[3] of a collective bargaining agreement,[4] effective August 1, 1929. The claim in general was that each person named in the petition had been wrongfully deprived of his seniority rights, in violation of the agreement, by furloughing him from the service of the defendant upon the untrue pretext that a reduction in force was then necessary, or by denying his return thereto, when in fact defendant was actually hiring new men for or advancing men junior in seniority, to his place; that proceedings had been taken before, and a favorable award obtained from, the National Railway Adjustment Board; and that plaintiff was entitled to have it enforced.

The defense to the suit, viewed either as one to enforce the order of the Board or as an independent suit, was that the petition stated no cause or right of action. To the suit viewed as one to enforce the order of the Board, the defense was that upon the petition and the Board's order attached, the Board was without jurisdiction of the claim, because they show that within the meaning of the act there was no case pending[5] and unadjusted on June 21, 1934, in regard to them or any of them. To the

---

[1] (p) "If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated, and except that the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings, unless they accrue upon his appeal, and such costs shall be paid out of the appropriation for the expenses of the courts of the United States. If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit. The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board."

[2] Rule No. 8. When a position in any of the respective crafts becomes vacant or a new position is created in the shops, round house, or outside points (Foremanship excepted) senior men in point of service will be given preference in filling such places. Seniority will govern all cases where capability is shown.

[3] Rule No. 9. When forces are reduced seniority is to govern when force is increased, men laid off will be given preference in re-employment, in the order of their seniority, if available within ten (10) days.

[4] An Agreement between the Louisiana & Arkansas Railway Company and the Employees composed of the following shop crafts—machinists, boilermakers, blacksmiths, sheet metal workers, electrical workers, carmen. It concluded:

"This Agreement becomes effective August 1, 1929, and it is mutually agreed that all former Rules, Rates and Regulations are void and that the provisions of this agreement will not be retroactive, nor will they be changed by either party without thirty days' notice in writing."

[5] "(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or ap-

suit viewed as one brought independently of the Board's order, there were two defenses. The first was that the 1929 contract was abrogated and set aside in February, 1931, and thereafter the relations of defendant and its employees were governed not by the contract but by rules promulgated by defendant; that as to the employees furloughed before February 9, 1931, there is no showing that they applied for and were denied reinstatement while the 1929 contract was in force; that those furloughed after the 1929 contract was abrogated were working not under the 1929 contract but under rules promulgated by the company; and that none of them therefore have shown any contract right to complain of the treatment accorded them since, as the pleadings show, it was accorded them under the company's rules.[6] The second was; that plaintiff in October, 1937, entered into a contract with it as representative of all the shop crafts,[7] expressly recognizing that the 1929 contract was validly abrogat-

---

plication of agreements concerning rates of pay, rules, or working conditions, *including cases pending and unadjusted on June 21, 1934*, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes." Title 45 U. S.C.A. § 153, subd. 1(i). (Italics supplied.)

[6] It was pleaded that the seniority provisions of the rules of February 9, 1931 were identical with those contained in the agreement of 1929, that on September 1, 1931, this purported rule was posted: "This seniority list will be held open for adjustment for a period of thirty (30) days or until September 30, 1931, after which time no adjustment will be made. Requests for adjustment of seniority must be made in writing to the undersigned.

"Seniority of former employees, who have *not* worked under the classification for which they held seniority during any twelve (12) months period, will be dropped from the seniority list."

It was further alleged that though the purported rules of February 9, 1931 were ineffective to change the rights granted to employees by the agreement of August 1, 1929, and did not purport to do so but confirmed those rights and the purported rule of September 1, 1931, was also ineffective to change them because not properly adopted, "The purported rules of February 9, 1931 and of September 1, 1931, however, were applied by the defendant until October 20, 1937, when another agreement was entered into."

[7] "These General and Special rules constitute the Agreement between the Louisiana & Arkansas Railway Company and its shop employees represented by System Federation No. 59, Mechanical Section, Railway Employees Department, American Federation of Labor, covering rules, working conditions and rates of pay, and covers all understandings now in effect, and supersedes rules posted February 9, 1931, and will remain in effect until after thirty (30) days' written notice served by one party on the other, or in accordance with procedure outlined by the Railway Labor Act."

Questions of seniority are set out in Rules 25 to 28.

Rule 25. Reduction of Forces. When reducing expenses, the hours may be reduced to forty (40) per week before reducing the force. When the force is reduced, seniority as per Rule 28 will govern, the men affected to take the rate of the job to which they are assigned.

Forty-eight (48) hours' notice will be given before hours are reduced. If the force is to be reduced seventy-two (72) hours' notice will be given the men affected before reduction is made, and lists will be furnished the Local Committee.

In the restoration of forces, senior laid-off men will be given preference in returning to service, if available within twenty (20) days, and shall be returned to their former position, if possible. Regular hours to be re-established prior to any increase in force under this rule. The Local Committee will be furnished a list of men to be restored to service.

In the reduction of forces the ratio of apprentices shall be maintained.

Rule 26. Employees laid off, account reduction in force, who desire to seek employment elsewhere, will, upon application, be furnished with transportation to any point desired, on the system when not contrary to National or State laws.

Rule 27. When reducing forces, if men are needed at other points, they will be given preference to transfer, with privilege of returning to home sta-

ed and superseded by the 1931 rules, and that the rights of the employees had been fixed and were to be measured, not by the 1929 contract, but by the 1931 rules, and that at the time of and after making the 1937 contract, none of the employees were claiming or had any seniority rights under the 1929 contract.

The District Judge agreed with defendant that no cause of action was stated either as a suit on the award or as an independent suit, and, in a careful opinion, D. C., 30 F.Supp. 909, fully setting out his reasons for the decision, sustained the motion to dismiss, and gave judgment accordingly. Plaintiff is here insisting that the judgment was wrong and should be reversed.

Because the matter comes up on the pleadings and the correctness of the judgment must be tested by the material allegations of the petition, we here set them out.

Stripped of the redundancies, prolixities and inconsistencies with which its many pages abound, the confused and confusing allegations of fact and law, come down at last to this; that the 95 persons named in paragraph 4 of the petition were in the service of defendant when the August 1, 1929, contract was made; that on the dates shown in that paragraph[8] each was furloughed and not taken back in the order of his seniority, though each requested that he be, the company giving as the reason for not doing so, the abrogation of the August 1, 1929, contract and the substitution therefor, of the rules of February 9, 1931, and the shop rule of September 1, 1931, Note 6, limiting the reinstatement rights of furloughed employees to 12 months; that this action was in violation of Clauses 8 and 9 of the 1929 contract, which was never legally abrogated but remained in force, covering their rights and relations with the defendant.

There was a further claim that if the 1929 contract was at all abrogated or at all affected by the 1931 rules, it was only partially abrogated to the extent that the contract conflicted with those rules; that the 1931 rules as to seniority were the same as those of the 1929 contract, the provisions of the contract being continued and carried forward into and by the rules; and that plaintiff's rights continued to be governed by the 1929 contract as so carried forward, unaffected by the September 1 rule. The date, the time, the occasion on which each made his demand for reinstatement is not set out or shown, except inferentially by the allegation that the company uniformly gave as its reason for declining to recognize their seniority rights that they had lost them under the 12 months rule of September 1, 1931; nor is there any claim that prior to the making of the contract of 1937, any action or proceeding was taken by plaintiff or any of its members, to present, make or maintain, a case involving these so-called seniority disputes. There is only the general allegation that those furloughed did not recognize the legality of the September 1, 1931 rule, requested the defendant to reinstate them to service according to their seniority rights under the agreement of August 1, 1929, as confirmed or carried forward in the purported rules of February 9, 1931, and that these requests were uniformly refused. Indeed, so far from alleging that there was any case pending and unadjusted involving the seniority rights in question, the petition alleged that there were no agreements or negotiations between defendant and plaintiff; that the purported rules of February 9, 1931, and of September 1, 1931, were applied by the defendant from February 9, 1931, until October 20, 1937, when another agreement, covering the rules and working conditions of the shop craft employees, was entered into between defendant and its shop craft

---

tion when force is increased, such transfer to be made without expense to the Company; seniority to govern.

Rule 28. Seniority. Seniority of employees in each craft covered by this Agreement shall be confined to the point where employed, in each of the following Departments; Maintenance of Equipment, Two subdivisions of the Carmen, as follows: Painters, Other Carmen. The seniority lists will be open to inspection and copy will be furnished the Committee.

8 Three respectively in May, November and December, 1929; thirty-three in April, May, June, 1930; nineteen in October, 1930; eleven in August, September, October, November and December, 1931; one in 1932; one in 1933; three in 1935; one in 1936; the rest have no date assigned and there is a later statement in the petition that six of those named are now deceased and that the remainder of those named are now and have been since their respective furloughs, able and willing to perform, for the defendant, services of their various crafts as the same might be required of them.

employees, and that during all of that time there were no negotiations or pending cases, indeed there was no regular channel for presenting disputes or cases.

In its petition to the Board, plaintiff's claim was roundly based on a claimed breach of the 1929 contract.[9] Nowhere in the claim before the Board was it contended that any of the seniority disputes in question were ever presented to anyone or were pending as a "case" anywhere, until after October, 1937. The Board found it had jurisdiction, basing this finding, not on a finding of fact that any dispute over the seniority questions had been presented as, and constituted "a pending and unadjusted case" on June 21, 1934, "but that a dispute existed on this railway to the extent that the president appointed a fact finding commission to report on the same and while the case in question is not one in which the fact finding commission investigated, it is one of the instances growing out of this dispute, therefore, the claim was pending and unadjusted June 1, 1934."

As the basis of its order, it found that Rule 9 of the agreement of August 1, 1929, was in effect, "either by agreement" or by Rule 9 of the February 9, 1931 rules, posted by the carrier, which was identical with Rule 9 of the 1929 agreement, and that the September 1, 1931, amendment to these rules was without force or effect. Further finding that it was unable to determine who upon the list submitted, was entitled to relief, it yet found generally that many of the employees had been furloughed and not re-employed in violation of the rules and were therefore entitled to relief. Its findings of fact therefore, and its award, instead of being and containing the definite determinations of fact, as to the persons entitled to relief, and the relief to which they are entitled, contemplated and required by the act, consisted of merely general statements, that some of the employees were entitled to some relief, and that those so entitled should be awarded such relief as they were entitled to. The act contemplates not merely general conclusions, but precise and definite findings of fact and final and definite awards, capable of enforcement, not vague general outlines which must be filled in by the courts.[10]

Considering the suit then as purely a statutory suit upon the award, we think it clear that it contains neither definite findings of fact entitled to have the effect of prima facie evidence, nor an award capable of enforcement. If then, the petition had stated facts showing a cause of action, within the jurisdiction of the Board, and that plaintiff was entitled to have a Board award on it, the suit should have been either dismissed, without prejudice to plaintiff's right to apply to the Board for

---

[9] In its statement of facts, it said "in 1930 the company arbitrarily cut wages of employees, also abrogated its agreement with plaintiff and later followed this by discriminating, discharging, coercing, intimidating and in every possible manner mistreating any and all employees who attempted to have the agreement and the law complied with by the company; that the railroad company willfully violated the agreement of August 1, 1929 by arbitrarily replacing it with a proposed set of rules, and has since 1930 continued to ignore this agreement as well as the representatives of the employees, who at various times during this period attempted to confer with the officials of the company. This condition continued up to October 8, 1937, when the company finally agreed to meet the duly authorized committee resulting in reestablishing an agreement with System Federation No. 59."

[10] "(m) The awards of the several divisions of the Adjustment Board shall be stated in writing. A copy of the awards shall be furnished to the respective parties to the controversy, and the awards shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award. In case a dispute arises involving an interpretation of the award the division of the Board upon request of either party shall interpret the award in the light of the dispute.

\* \* \* \* \* \* \*

"(o) In case of an award by any division of the Adjustment Board in favor of petitioner, the division of the Board shall make an order, directed to the carrier, to make the award effective and, if the award includes a requirement for the payment of money, to pay to the employee the sum to which he is entitled under the award on or before a day named.

(p) Sec. (p) providing for a suit in the district court, provides "such suit \* \* \* shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated."

a reopening and redetermination, or stayed, until on a re-reference to the Board, definite findings of fact and a definite award was made. The claim, however, was not a "pending and unadjusted case" on June 21, 1934, and therefore not one of which the Board had jurisdiction. Besides for reasons hereinafter stated, no right or cause of action on which either an award of the Board or a judgment of the court could be rested was shown. The judgment dismissing the suit was therefore right and must be affirmed.

▇ Putting aside the conclusion of the pleader, that the 1929 contract had not been abrogated, and it must be put aside for it is quite clear from the facts pleaded, that it was abrogated in accordance with the 30-day provision in it, and that plaintiff has recognized that this is so, the theory of the suit boils down to this; that by the 1929 contract, plaintiff and its members acquired indefinitely continuing rights, which could not be affected by the abrogation of the old agreement, the institution of rules in lieu thereof, or the making of a new agreement, on the theory that once an employee, always an employee, once a senior, always a senior. The result of this theory is the claim, that though most of those named have not worked for the company during the past ten years, they must not only be now paid for all of that time as though they had, but must be permitted to displace others who have been and were working, as employees of the company under the 1931 rules and amendments, when the 1937 contract was signed, and whose seniority, as established and fixed by those rules, was settled and confirmed by the contract. This will not at all do.

▇ Out of the confusion and uncertainty, which has surrounded the germination and growth of the body of law, which has grown up around collective bargaining contracts and relations, certain general principles have emerged and become settled in this and in most jurisdictions. The application of these principles requires the rejection of plaintiff's theory and the affirmance of the judgment against it. These principles are; that under a contract like that of August 1, 1929, containing provisions, as in Rule 15,[11] that no employee will be dismissed or suspended without just or sufficient cause; for investigation and hearing of complaints; and for restitution when action has been taken contrary to the contract. While that contract was in force, persons coming or accepting under it, had their tenure and rights governed by its terms, and for action taken contrary thereto, they had a right of action to redress their grievances. Yazoo & M. V. R. R. v. Webb, 5 Cir., 64 F.2d 902; Illinois Central R. R. v. Moore, 5 Cir., 112 F.2d 959;[12] Boucher v. Godfrey, 119 Conn. 622, 178 A. 655; Donovan v. Travers, 285 Mass. 167, 188 N.E. 705; Piercy v. L. & N. R. Co., 198 Ky. 477, 248 S.W. 1042, 33 A.L.R. 322; Rentschler v. Missouri Pacific R. R., 126 Neb. 493, 253 N.W. 694, 95 A.L.R. 1, and note, where all of the applicable authorities are collected and discussed.

Differences of opinion do still exist in different jurisdictions, as to the relations of the union and its members, to the contract, as between themselves. Some courts say the union is "not the agent of the member for the purpose of waiving any personal right he may have, but is only his representative for the limited purpose of securing for him, together with all other members, fair and just wages and good working conditions."[13]

Others, as in Donovan v. Travers, supra, hold the union to be the principal and not the agent, and that such rights as the employees have, will depend upon the contract as made, altered, and abrogated by the union.[14]

---

[11] Rule No. 15. When requested the Company will grant leave of absence for and furnish transportation to Committeemen who desire to go before the Management or to adjust grievances; such men will in no way be subjected to unjust discrimination. Presentation of grievances to be made within five days, in dismissal or suspension cases.

Section A. No employee will be dismissed or suspended without just and sufficient cause. If after proper investigation it is found that a man has been unjustly discharged or suspended he will be reinstated and paid for all time lost.

[12] Affirmed, except as to the holding that employees' rights are based on his verbal acceptance of, rather than on, the written contract, Moore v. Illinois Cent. R. R., 61 S.Ct. 754, 85 L.Ed. ——.

[13] Piercy v. L. & N. R. Co., supra [198 Ky. 477, 248 S.W. 1045, 33 A.L.R. 322].

[14] "We pass over difficult questions of parties and of equity jurisdictions which have not been raised by the pleadings nor discussed in argument; and address ourselves to the merits of the decrees.

We, however, are not concerned with that question here, for no conflicting rights or claims of members and union[15] are asserted here. The members of the union are not the plaintiff, the union itself is plaintiff, suing, as it states in its petition, as the representative of all of its members, and no claim is made on any hand, nor indeed, none could be, that the union is asking anything inconsistent with the rights of any of its members.

The only question with which we are here concerned is whether the seniority rights claimed, arise out, and exist, because of, the 1929 contract, and persist during and only during its term, or whether they indefinitely continue to exist after it has been abrogated, and the relations of employer and employee are no longer fixed and being carried on, under that contract, but for many years under rules, promulgated by the company, and later under a contract between the company and the union which affirms that it "covers all understandings now in effect."

On this point the authorities are uniform. They settle it that collective bargaining agreements do not create a permanent status, give an indefinite tenure, or extend rights created and arising under the contract, beyond its life, when it has been terminated in accordance with its provisions. Authorities, supra. The rights of the parties to work under the contract are fixed by the contract. They persist during, they end with, its term. After the termination of the 1929 contract, those who remained in the employ of the defendant, or came into it afterwards, held their tenure and such rights as they had, not under the 1929 contract, but at first under the company rules and later under the 1937 contract, and none of them can claim rights contrary thereto.

The rights accorded plaintiff and its members under the 1929 contract are clear. Under it, any of the persons named who were furloughed during its continuance had a right, during the life of the contract, to apply for reinstatement under its terms. After its abrogation that right was lost and reinstatement could not be claimed under its terms, but only under the terms of the company rules until 1937, and after 1937, under the terms of the 1937 contract.

If, on February 7, 1931, when the 1929 contract was abrogated, any of those furloughed before that date, had decided not to return to work, they could have stood upon their claim, that they had been furloughed contrary to the terms of their contract, and sought reparation for the time lost while the contract was still in force. They could not, because the contract had been breached as to them, claim that the breach had extended its life, so as to entitle them to time lost, and to reinstatement, after its abrogation. No claim ever has been made for damages up to the time of the contract's abrogation. No such claim is made now. The claim as made before and now is not for loss of wages up to the abrogation of the 1929 contract. It is for loss of wages up to the present time, together with the right to displace and take the place of those who working for the company, under the 1931 rules, were working for it when the 1937 contract was

---

The substantial issue is whether the rights of the plaintiffs are fixed by the terms of the agreement between the union and the railroad as it stood when the several plaintiffs entered upon their service interpreted only in the light then available; or whether as the agreements changed from time to time, the modifications and possible changes in interpretation of terms agreed upon by the union and the railroad modified and affected the individual contracts of those already in the railroad's employ. We think the latter to be the proper position. The transaction is an agreement between an employer and a labor union designed by the latter to benefit itself and those members who enter the employer's service. The employee stands no higher than the union. If it modifies the agreement with the employer, the employee must acquiesce. In no correct sense is the union an agent. It is a principal. See Whiting Milk Companies v. Grondin [282 Mass. 41], 184 N.E. 379." Donovan v. Travers, supra [285 Mass. 167, 188 N.E. 707].

[15] Estes v. Union Terminal Co., 5 Cir., 89 F.2d 768; Nord v. Griffin, 7 Cir., 86 F.2d 481; Donovan v. Travers, supra; Piercy v. L. & N. R. Co., supra; Hoban v. Dempsey, 217 Mass. 166, 104 N.E. 717, L.R.A.1915A, 1217, Ann.Cas.1915C, 810; Ryan v. Hayes, 243 Mass. 168, 137 N.E. 344; Panhandle & S. F. R. v. Wilson, Tex.Civ.App., 55 S.W.2d 216; Cf. Harper v. Local Union, Tex.Civ.App., 48 S.W.2d 1033; McGregor v. Louisville & N. R. Co., 244 Ky. 696, 51 S.W.2d 953; Brisbin v. Brotherhood, 134 Neb. 517, 279 N.W. 277; Wyatt v. Kansas City Southern, Tex.Civ.App., 101 S.W. 2d 1082.

made, and are working for it now under the terms of that contract.

As to the employees furloughed after the termination of the 1929 contract and under the 1931 rules, they could, of course, claim no rights under contract. The 1929 contract was no longer in effect, and it is not claimed in the petition that any of the persons named in it had any personal or individual contract of their own with the company. Cf. Boucher v. Godfrey, supra.

The judgment is affirmed.

Affirmed.