**BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES et al., Plaintiffs,**

v.

**BUTTE, ANACONDA & PACIFIC RAILWAY COMPANY, The Anaconda Company, and Metropolitan Life Insurance Company, each a corporation, Defendants.**

**No. 844.**

United States District Court
D. Montana,
Butte Division.

Jan. 11, 1962.

704

Schoene & Kramer, Washington, D. C., and Erickson & Richards, Helena, Mont., for plaintiffs.

Sam Stephenson, Jr., and Joseph P. Woodlief, Butte, Mont., for defendant Anaconda Co.

R. Lewis Brown, Jr., and William J. Kelly, Butte, Mont., for defendant Butte, A. & P. Ry. Co.

Corette Smith & Dean, Butte, Mont., for defendant Metropolitan Life Ins. Co.

WILLIAM D. MURRAY, Chief Judge.

Plaintiffs, national labor organizations, as the representatives of nonoperating employees of defendant Butte, Anaconda & Pacific Ry. Co., bring this action to enjoin defendants from reducing by $4,000 the amount of group life insurance provided each non-operating employee of B. A. & P. who desires to participate in such group life insurance program. Defendant B.A. & P. is a wholly owned subsidiary of defendant Anaconda Company, and the group insurance in question is provided under a group insurance contract between Anaconda and defendant Metropolitan Life Insurance Company, covering employees of Anaconda Company and its subsidiaries. It is alleged that the threatened reduction in the amount of insurance constitutes a violation of the Railway Labor Act, 45 U.S. C.A. § 151 et seq., and this court's jurisdiction is predicated on 28 U.S.C. §§ 1331 and 1337. A temporary restraining order was issued restraining defendants from carrying out the threatened reduction in the amount of insurance, and also restraining plaintiffs from striking over this issue pending hearing, and after the hearing was had, the temporary restraining order, upon agreement of the parties, was continued in effect until a decision was made.

From the evidence presented at the hearing it appears that the life insurance program was unilaterally established by Anaconda in the year 1936 for its employees and employees of its subsidiary companies including B.A. & P. At the times involved here the group policy was carried by Metropolitan under Group Policy No. 16500–G. Under the policy, employees electing to participate were entitled to life insurance in amounts up to $6,000 [1] each, for which they paid 60¢ per month per thousand which, in the case of employees represented by plaintiffs, was deducted from their wages by B.A. & P. The balance of the premium, which constituted the major portion, was paid by B.A. & P. It has been the practice to permit employees of B.A. & P.

1. Plaintiffs allege in their complaint and all of the defendants admit, either in their answer or post-trial brief that the insurance is available to employees in amounts up to $6,000. The policy which was received in evidence indicates that insurance is available in an amount approximately equal to the annual wages of the employees, which may be more or less than $6,000. However, the exact amount of insurance which may be involved in the case of any particular employee is unimportant in the decision of the questions before the Court.

upon retirement to continue to carry the insurance upon the same terms with no increase in the premium contribution by the retired employee and with no reduction in insurance benefits.

The group insurance policy itself was in the possession of Anaconda, and employees upon becoming insured under the plan were issued a Group Insurance Certificate which indicated the employee's name, the amount and effective date of the insurance, the designated beneficiary, and which contained a summary of the policy provisions. It is apparent from the face of the Group Insurance Certificate that the insurance evidenced by the certificate was issued under and subject to the terms and conditions of Group Policy No. 16500–G. One of the terms of Group Policy No. 16500–G is the following:

"The amount of Life Insurance hereunder as to any Employee who is eligible for Life Insurance under any other group life insurance policy or policies shall be the amount applicable to him in accordance with the foregoing schedule reduced by the total amount of life insurance for which he is eligible under such other group life insurance policy or policies."

A copy of a booklet describing the group life insurance plan which was furnished by the employer to employees when the plan was inaugurated in 1936 was received in evidence as defendants' Exhibit 19, and a copy of a slightly different booklet descriptive of the plan, which is currently being distributed to new employees, was received in evidence as plaintiffs' Exhibit 5. In both of these booklets the statement is made that the em-

ployer reserves the right to amend or cancel the group insurance plan at any time. There is a conflict in the evidence as to whether employees of B.A. & P. received such booklets, but whether they did or not is immaterial in the view the Court takes of this case, as will hereafter appear.

Several members of the plaintiff Brotherhoods, employees of B.A. & P., testified that they regarded the group life insurance as a very important part of the remuneration which they received in their employment with B.A. & P., and the Court finds that to be the fact.

On or about September 1, 1959, each of the plaintiff Brotherhoods served a so-called Section 6 notice [2] on the defendant B.A. & P. The Section 6 notice from the International Brotherhood of Electrical Workers [3] was in part as follows:

"Please consider this letter the usual and customary thirty-day notice under the Railway Labor Act, as amended, of our desire to revise and supplement all existing agreements in accordance with the proposals set forth in 'Appendix A' attached hereto, such provisions to be effective November 1, 1959 except as otherwise specified therein * * *.

* * * * * *

"It is our desire that conferences on this notice be held at the earliest practicable date and in any event prior to Oct. 1, 1959, and that you, within ten days after receipt of this notice, suggest a date, time and place for this conference. In the event that we are unable to reach an agreement upon the foregoing request at such separate system conference, we

2. Section 6 of the Railway Labor Act, 45 U.S.C.A. § 156, which provides in pertinent part as follows: "Carriers and representatives of employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between * * * the parties interested in such intended changes

shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice * * *."

3. The Section 6 notice of the I.B.E.W. is the only one introduced in evidence at this hearing, but it was stipulated that identical Section 6 notices were sent by all of the other plaintiff unions to B. A. & P. on or about September 1, 1959.

further propose that the matter be handled on a joint National basis.

\*   \*   \*   \*   \*   \*

"In the event an agreement is not reached in our separate system conferences, we request that you join with other carrier managements who are receiving a like notice, in the creation of a Carriers National Conference Committee which will be authorized, like our Employes' National Conference Committee, to negotiate to a conclusion in accordance with the procedures of the Railway Labor Act, the subject matter of this notice \*   \*   \*."

Appendix A, attached to the foregoing notice, contained changes which were demanded by the employees in existing contracts in two fields, one denominated "Health and Welfare Plan", and the other "Wages." Under "Health and Welfare Plan", Appendix A read as follows:

"1. Hospital, surgical and medical benefits shall be *improved* as follows:

(Here follows a list of changes demanded in hospital, surgical and medical benefits listed in four subparagraphs denominated a, b, c and d.)

"2. The employer shall, without cost to the employee, provide life insurance for each employee, to pay upon his death an amount equal to the full time annual earnings at the rate of pay of the highest rated position held by the employee in the service of the employer but not in excess of $5,000 to his designated beneficiary."

Plaintiffs and defendant B.A. & P. were apparently unable to agree on the requests made by plaintiffs in their Section 6 notices, and so-called standby agreements were entered into between the plaintiffs and the B.A. & P., under the terms of which the local negotiations were suspended and the unions and carriers agreed to be bound by whatever agreement was reached between the Carriers' National Conference Committee and the Employes' National Conference Committee, who were negotiating on a nationwide basis demands similar to those here involved made by plaintiffs on other carriers. The national negotiations culminated in an agreement dated August 19, 1960.

The national agreement provided for a wage increase effective July 1, 1960, and improvements in vacation, holiday and existing hospital, surgical and medical group insurance benefits, and in addition provided for group life insurance in the amount of $4,000 per employee to be paid for entirely by the employer, to be included in the existing Travelers Insurance Co. policy which covered the existing hospital, surgical and medical insurance. The improved hospital, surgical and medical insurance benefits and the group life insurance granted the non-operating employees by the carriers in the national agreement were in lieu of a second wage increase effective March 1, 1961, which employees of the railroads represented by railway labor organizations other than the plaintiffs (operating employees) received under agreements made with the railroads at about the same time.

When the time arrived to put into effect on the B.A. & P. the insurance provisions of the national agreement, the present controversy arose. B.A. & P. tendered the required premium for the insurance under the national agreement to the Travelers Insurance and at the same time announced that the group life insurance provided its employees represented by plaintiffs under the Metropolitan policy would be cancelled, and such insurance was in fact cancelled, effective as of March 1, 1961. Plaintiffs insisted the Travelers Group Insurance should be in addition to the Metropolitan insurance. Because of the existence of this dispute, B.A. & P. refused to sign a written agreement with the plaintiffs adopting the national agreement, and because of this refusal on the part of B.A. & P., the plaintiffs refused to certify B.A. & P. to Travelers Insurance Co. as a participating carrier in the Travelers Group Policy provided for by the national agreement,

which certification was necessary under the terms of the policy. As a result, the premium tendered by B.A. & P. was refused by Travelers, and no coverage of B.A. & P. employees was had as of March 1, 1961, under the Travelers policy. When the premium tendered Travelers by B.A. & P. was returned, the Metropolitan coverage was reinstated and the parties continued their efforts to resolve the controversy.

Plaintiffs invoked the services of the National Mediation Board under the provisions of § 5 of the Railway Labor Act, 45 U.S.C.A. § 155, referring two disputes to the Board, first, the refusal of B.A. & P. to make a written agreement with plaintiffs adopting the terms of the national agreement of August 19, 1960, in accordance with their standby agreements, and second, the cancellation by B.A. & P. of the Metropolitan life insurance coverage. When the efforts of the National Mediation Board failed to resolve the dispute and the parties refused to arbitrate, the Mediation Board closed its file on the matter and thereafter the employees represented by plaintiffs took strike votes and a strike was set for May 17, 1961.

On May 16, 1961, B.A. & P. commenced an action in the State District Court and obtained an injunction against the strike on the grounds that such strike was in violation of the Railway Labor Act. The defendants in that suit, some, but not all, of whom are plaintiffs in this action, removed that case to this court and in this court it became Civil Action No. 834. Here the case was eventually disposed of by stipulation, the principal results of which were that B.A. & P. agreed to adopt in writing the provisions of the national agreement and to procure coverage for its employees under the Travelers policy, and also agreed that it would not attempt to reduce or cancel the life insurance coverage under the Metropolitan policy without at least 20 days notice to the Unions, and the Unions agreed that they would not set a strike date on the issue without 10 days notice to B.A. & P.

Thereafter B.A. & P. served notice that effective as of July 1, 1961, the life insurance coverage of its employees represented by plaintiffs under the Metropolitan policy would be reduced by $4,000, and the plaintiffs brought the present action claiming that such reduction was in violation of the provisions of the Railway Labor Act, and the temporary restraining order first above referred to, and which is still in effect pursuant to stipulation of the parties, was issued.

Plaintiffs' position is that the Metropolitan life insurance coverage, by virtue of its being in existence for some 25 years, had become a condition of employment which could not be unilaterally changed by the B.A. & P. without violating the Railway Labor Act, and specifically Section 2, Seventh of the Act, 45 U.S.C.A. § 152, Seventh, which provides as follows:

"Seventh. No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title."

Plaintiffs cite no authority, and the Court has not found any, holding that the establishment and continuance by an employer for a long period of time of a group insurance plan, without an agreement with his employees to do so, makes that plan a working condition, such as the Railway Labor Act prohibits changing except as provided in the Act. In Elder v. New York Cent. R. Co., 152 F.2d 361 (6 Cir., 1945), speaking of a seniority right, which would certainly be as much a condition of employment as group life insurance, the Court said;

"The seniority right of the man who toils, indoors or out, in a shop or in an office, is a most valuable economic security, of which he may not be unlawfully deprived. The right, however, is not inherent. It must stem either from a statute or a lawful administrative regulation made pursuant thereto, or from a

contract between employer and employee, or from a collective bargaining agreement between employees and their employer. In the absence of statute, mere employment independent of the contractual conferring of special benefits upon those who have longest service records with the individual employer, creates no rights of seniority in retention in service or in reemployment."

In this case no agreements between individual employees and B.A. & P., and no collective bargaining agreement between plaintiffs and B.A. & P. making the Metropolitan group life insurance policy a condition of employment were produced, and no statute or regulation creating the right to the Metropolitan group policy was cited.

■■ Assuming, however, that under the Railway Labor Act and by virtue of its continued existence for some 25 years the Metropolitan group insurance did become a condition of employment on the B.A. & P. of those employees represented by plaintiffs, it could not and did not become a condition of employment of any higher dignity or integrity than those other conditions of employment which result from collective bargaining agreements, and the latter may always be changed by subsequent collective bargaining. The authorities are uniform to the effect that collective bargaining agreements do not create a permanent status or extend rights created and arising under the contract beyond its life. System Federation No. 59, etc. v. Louisiana & A. Ry. Co., 5 Cir., 119 F.2d 509, 515; Elder v. New York Cent. R. Co. supra.

Losses to employees as well as gains may result from collective bargaining. There is nothing in the Railway Labor Act or any other law which guarantees that employees will always gain in collective bargaining negotiations. Concessions must be and frequently are made. "Any authority to negotiate derives its principal strength from a delegation to the negotiators of a discretion to make such concessions and accept such advantages as, in the light of all relevant considerations, they believe will best serve the interest of the parties represented." Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048. The complete satisfaction of all who are represented in collective bargaining negotiations is hardly to be expected. Ford Motor Co. v. Huffman, supra; and contracts may be made which have unfavorable effects on some. McMullans v. Kansas, Oklahoma & Gulf Ry. Co., 229 F.2d 50, 54 (C.A. 10–1956).

So in this case, granting that the Metropolitan insurance had become a condition of employment of the B.A. & P. employees represented by plaintiffs that could only be changed as provided by the Railway Labor Act, the record here shows that such condition was so changed. By their Section 6 notice of September 1, 1959, plaintiffs notified B.A. & P. that they desired to *"revise and supplement all existing agreements* in accordance with the proposals set forth in 'Appendix A' attached hereto". In stating their demand concerning life insurance in Appendix A, plaintiffs made or sought no reservation of the existing Metropolitan insurance. In the standby agreements between plaintiffs and B.A. & P., in which they agreed to accept whatever agreement came out of the national negotiations, there was no provision that the employees represented by plaintiffs would receive the benefits of the national agreement concerning life insurance in addition to the existing Metropolitan insurance. In the national agreement itself, which plaintiffs and B.A. & P. agreed to accept, there is no provision reserving existing life insurance, although in connection with other conditions local situations were specifically reserved in the national agreement. Finally in the written agreement dated May 31, 1961, which was executed by the plaintiffs and B.A. & P. as a result of the stipulation disposing of Civil Action 834 in this court, it is provided "it is understood and agreed that the parties hereto do hereby adopt and agree to apply the terms and conditions of the National Agreement signed at Chicago, Illinois, August 19, 1960, * * *

to be applied in the same manner and to the same extent as though participants were originally parties to the (National Agreement)." There was no provision in the May 31, 1961, agreement reserving the Metropolitan insurance or providing that the life insurance provisions of the National Agreement were in addition to the Metropolitan insurance. Therefore, when plaintiffs by their Section 6 notice opened up *all* existing contracts with B. A. & P. on the subject of life insurance, and when such Section 6 notice, after the procedures of the Railway Labor Act had been followed, culminated in the National Agreement of August 19, 1960, and the agreement of May 31, 1961, any preexisting condition of employment of employees on the B.A. & P. represented by plaintiffs with regard to life insurance terminated, and the provisions of the National Agreement concerning life insurance became the condition of employment on the B.A. & P. with respect to life insurance as far as the non-operating employees were concerned. In other words, whether they realized it or not, or whether they so intended plaintiffs have bargained away the Metropolitan insurance of their members employed by B. A. & P., and the Court cannot rewrite for them the contract they freely entered into.

It follows that when the National Mediation Board closed its file after the parties refused to arbitrate the dispute, and no further steps were taken under Section 5 of the Railway Labor Act, the B. A. & P. was free to cancel the Metropolitan insurance 30 days after receiving notification of the Mediation Board's action. It likewise follows that if B.A. & P. or Anaconda desire to provide employees of B.A. & P. represented by plaintiffs $2,000 more life insurance than they are entitled to under their collective bargaining agreement by continuing in effect that amount of Metropolitan coverage as they have offered to do, they are also free to do that.

In this latter connection, and despite plaintiffs' arguments to the contrary, which the Court is unable to follow, the Court is of the opinion that the provision of the Metropolitan policy quoted above would, in any event, require the coverage under the Metropolitan policy to be reduced by $4,000, the amount of group life insurance which the non-operating employees of B.A. & P. became eligible for under the terms of the National Agreement. The policy provision is clear and admits of no other interpretation.

The circumstances of this case demonstrate the dangers to both sides, and particularly the employees, inherent in the practice of permitting local rates of pay, rules and working conditions to be settled on the basis of national negotiations. Apparently the demand concerning life insurance in the Section 6 notices was formulated by plaintiffs on a uniform nationwide basis without an awareness of the existence on the B.A. & P. of the group insurance already provided. No mention was made of it in the notices and no attempt was made to reserve it. Certainly anyone aware of the existing life insurance available to employees of B.A. & P. would consider and mention that coverage one way or the other in opening up all agreements with respect to the subject of life insurance. Thereafter, when the Section 6 notices terminated in the national agreement which was accepted by the plaintiffs on behalf of the B.A. & P. employees, and no reservation of the Metropolitan coverage was made, the life insurance provided by the national agreement became the only insurance to which B.A. & P.'s employees represented by plaintiffs were entitled.

The temporary restraining order heretofore issued in this case is hereby ordered dissolved, and counsel for defendants are directed to prepare, serve on counsel for plaintiffs for approval as to form only, and lodge with the court a form of judgment dismissing this action in accordance with Rule 11(b) of the Rules of this court.